## BUSWELL v. MISSOURI PACIFIC TRANSP. CO.

### No. 1896.

Court of Appeal of Louisiana. First Circuit.
Nov. 17, 1938.

Fred G. Benton and Carlos G. Spaht, both of Baton Rouge, for appellant.

Porteous, Johnson & Humphrey, of New Orleans, for appellee.

Le BLANC, Judge.

The plaintiff, who had paid his fare, was a passenger aboard a motor transportation bus of the defendant company which is engaged as a public carrier, op-

erating, among others, a line of passenger buses between the cities of Monroe and New Orleans in this State. Under the contract of carriage the defendant had obligated itself on September 27, 1936, to safely transport the plaintiff from Sicily Island in the Parish of Catahoula to Baton Rouge. At about 2:45 in the afternoon when the bus was nearing a point about six miles south of St. Francisville in the Parish of West Feliciana, an accident occurred in which the plaintiff sustained some personal injuries and also claims that as a result of the trauma which he suffered, and by being exposed for some five or six hours in wet clothing, a tubercular condition which he alleges had been diagnosed as an arrested case, was reactivated, for all of which he has instituted this suit to recover damages in the sum of $9,105.

At the place where the accident occurred, there is a creek known as Thompson's Creek which is spanned by a wooden bridge over which the bus had to pass. At the moment it was on the bridge the driver had lost control of the steering wheel and as a result the bus crashed into the guard rail on the side, tore it down and plunged some 11 feet into the gully below the bridge and continued traveling a distance of several feet beyond that point. The country in the surrounding neighborhood is hilly and the road made up of many curves.

Plaintiff charges the driver of the bus with negligence in driving on the road as thus described at an excessive rate of. speed said to be between sixty and sixty-five miles per hour, and also in failing to have taken heed of an unnatural and very audible noise from the motor or some other part of the bus a short distance before it came upon the bridge. He alleges that when the driver removed his foot from the accelerater, the noise which he had heard became inaudible and instead of stopping the bus to investigate the trouble, he again stepped on the accelerater, causing the bus to again resume its speed and immediately thereafter the accident happened. Plaintiff disclaims any fault or contributory negligence on his part and alleges that, aside from the facts as set out, he had no knowledge as to the cause or combination of causes which produced the accident, but that under the law of this State as expressed in the jurisprudence on the doctrine of res ipsa loquitur it was due to the fault and negligence of the defendant's bus driver and he is therefore entitled to recover the damages which he has suffered.

He asks $1,500 for physical injuries, $1,000 for physical pain and suffering, $1,500 for mental anguish, $5,000 for the detrimental effect upon his health due to his aggravated tubercular condition, and $105 for medical and sanitarium expenses.

The defendant in its answer denies any liability as it alleges that the accident which it admits did happen was altogether unavoidable, being due to a latent defect in the bus, of which it had no knowledge and had no way of acquiring knowledge thereof. It denies negligence on the part of its driver and also denies that the plaintiff was as seriously injured as he claims. In setting out the cause of the accident the defendant alleges that the connecting rod on cylinder No. 6 in the motor broke off near the piston, punching a hole in the side of the crank case and going into the steering gear housing so that the steering gear arm shaft could not operate and the driver thus lost control of his steering wheel. The break in the connecting rod, it avers, was due to a condition of crystallization which was unknown to it and which it was impossible to detect in spite of the frequent, regular and thorough inspections which are made of its buses and which was made of the bus involved in this accident immediately prior to the trip it was then making.

On the issues as thus presented to him, the district judge after trial and submission of the case rendered judgment in favor of the plaintiff holding that there was negligence in a certain respect on the part of the driver of the bus. The district judge however was of the opinion that the preponderance of the testimony was to the effect that the accident had no definite influence on the course of the plaintiff's tubercular condition and he therefore restricted his recovery to the personal injuries sustained by him which consisted of bruises and contusions about the body generally, a simple fracture of one of his ribs and general shock. He allowed him the sum of $750 for these injuries and rendered judgment in his favor for that amount. Plaintiff being dissatisfied with the amount of the award appealed and the defendant has answered the appeal, praying for a reversal of the

judgment on the question of 'negligence and consequent liability, and in the alternative for a reduction in the amount of the award in the event it should be held that there was liability.

█ On the question of the negligence of the bus driver and the liability of the defendant, we do not find much trouble in agreeing with the learned trial ·judge. There is no dispute on the proposition of law that whilst a common carrier of passengers, such as the defendant in this case, is not an insurer of the safety and· lives of the people transported by it in their public conveyances, it is nevertheless held to the exercise of the highest degree of care in the operation of such conveyances and once an accident is shown to have happened and a passenger is injured the burden is upon it to establish by a preponderance of testimony that it had discharged the duty under which it was held to this degree of care and prudence. Whilst it is true also that the carrier may be absolved from liability if the accident was due to some fortuitous event or to some hidden or latent defect in its equipment which it was impossible for it to discover even in the exercise of the best care, the charge of negligence in this case and the testimony as adduced take us beyond the possibilities of such defense and the important issue is presented on an allegation of negligence which may be considered apart therefrom and one which may be said to be distinct in itself.

It might readily be conceded that the defense of a latent defect in this case is good and sound, so far as it goes, as we think it can safely be asserted that the defendant has shown a case of crystallization strong enough to support it, but is that defense sufficient in itself where the driver is charged with further negligence in not bringing the bus under proper control after the defect had become apparent to him and he had lots of time within which to stop it and thus avert the accident?

█ As pointed out by the trial judge if as a matter of fact there was a latent defect which set the accident in motion and following the unusual situation caused by it, and of which he had notice, the driver did not do all that he could have done in order to safely meet the emergency and minimize, if not in fact avoid the damage, the latent defect of itself will not excuse or condone his subsequent conduct and he will necessarily be held negligent and his employer liable.

On this point it is noted that one of the defendant's own witnesses, Mr. A. C. Miller, a shop foreman in New Orleans who went to the scene of the accident immediately, testified that the first evidence of trouble to the motor appeared in the form of a spot of oil on the highway and a fragment of broken metal which he observed and found at a place on the highway, 308 feet from the point where the bus left the bridge, according to his own measurement. After tearing approximately 41 feet of guard rail from the bridge, the bus fell some 11 feet below, and then continued on a distance which this witness measured as being 90 feet before it overturned. It is thus seen that from the time the trouble first began and when it should have been perceived by the driver, if in fact it was not so perceived, the bus traveled 398 feet, in which distance it ran through the guard rail on the side of the bridge as just stated, plunged 11 feet into a gully beneath and covered 90 feet more of that distance before coming to a stop. These facts as testified to by one of its own witnesses are sufficient to overcome all other testimony adduced by the defendant regarding the distance it takes to stop a bus going at a given ·rate of speed. Under these facts and circumstances, the district judge very properly found himself compelled to accept either one of two alternative theories. Either, as he says, the bus was going at a much faster rate of speed than it should have been traveling in view of the topography of the country, it being shown that the country was hilly and the road a winding one, or else in the emergency the driver did not make use of the brakes with which the bus was equipped, and which were in perfect working condition. Under either theory of course he has to be held negligent and the defendant liable.

█ In commenting on this phase of the case counsel for defendant invokes the rule of sudden emergency under which the driver of a vehicle is not held to the same exercise of care and deliberate judgment as he would under a normal situation and will be exonerated from a charge of negligence even if it is shown that he did not pursue the safest course

402

in his attempt to avoid the accident. The rule of course applies only in favor of the driver who was in no way responsible for creating the sudden emergency. In this case the unfortunate driver was killed in the accident and his version as to how it occurred was never given. Whilst it is true that the latent defect which originated the accident was not of his making, it strikes us from the testimony to which we have referred as given by one of defendant's own witnesses, that he had sufficient time after noticing there was something unusual, in which to apprehend the danger and prepare himself to safely meet the emergency.

As already stated, the burden in this case was upon the defendant to show that everything possible had been done to avert the accident. Whilst a condition of latent defect is presented, our careful consideration of the testimony leads us, as it did the district judge, to the conclusion that the accident was not due solely to that defect and that the negligence of the driver following his discovery of the defect, under either one of two theories, which can be adopted, was the cause thereof. On the question of liability therefore we find ourselves in accord with the view of the trial judge and we now proceed to a discussion of the question of damages plaintiff is entitled to recover.

█ The most serious item of damage presented is the demand for $5,000 for the detrimental effect upon plaintiff's recovery from his tubercular condition. It appears that the plaintiff had been a victim of this insidious disease for a few years. He himself testified that his case was diagnosed as tuberculosis September 15, 1934. He entered Greenwell Springs Sanitarium, a State institution for the treatment of tubercular patients situated in the Parish of East Baton Rouge, on July 1, 1935 and had been receiving treatment since that date. He claims that his condition had improved to the extent where his case was classified as being an arrested one. His demand is predicated on the set back which he asserts to have been caused through the injuries and shock sustained by him in the accident and the exposure he was subjected to in having had to remain in wet clothing for several hours thereafter. He had been given a furlough and was returning from his home to the hospital on the day of the accident.

Doctor W. A. Lee, who was a partner of Dr. Sitman, now deceased, former Superintendent of Greenwell Springs Sanitarium, testified as a witness on behalf of the plaintiff. As Dr. Sitman's professional partner he did considerable work for him at the sanitarium and whilst he did not treat the plaintiff, he says that he saw him in making his regular rounds at the hospital and was familiar with his condition. In the month of March, 1936 he remembers that plaintiff underwent an operation for appendicitis from which he recovered with no ill effects to his lungs. In describing his condition, Dr. Lee states that plaintiff had improved, "and we had called his case an arrested case and had given him permission to go home, and he was returning when this happened." That is all the medical testimony found in the record bearing proof on the point that at the time just preceding the accident plaintiff's case was an arrested one. The hospital records are all filed as part of the testimony in the case but when asked to be shown where they supported his claim, Dr. Lee himself stated that he doubted that they would show that because the records themselves are very incomplete. All of this, taken in connection with the testimony of other doctors who testified as experts from the reading of X-ray plates concerning the actual condition of the plaintiff's case at that time, leaves us in serious doubt on this question. Our impression, like that of the district judge, is that the condition might more definitely have been described as improved.

Plaintiff testified that immediately after the accident he spat up blood, but his testimony on this point is not corroborated. Dr. Lee who saw him in the Baton Rouge hospital where he had been taken that night testifies that the plaintiff gave him a history of having spat up blood, but he himself did not see him and did not know that he did.

Plaintiff remained in the hospital at Baton Rouge for about a week and then was taken to the Greenwell Springs Sanitarium where his treatment for tuberculosis was continued and he also received treatment for his other bodily injuries. The charts from then on, as far as they go, indicate that his case progressed very much in the same way it had in the year previous to his injuries, and there is medical testimony, including that of Dr. Oscar

W. Bethea, Dr. Shirley C. Lyons and Dr. Amadee Granger, experts called on behalf of the defendant and who based their findings on reading the X-ray plates, to the effect that he made the greatest progress and improvement during the year following the accident. The doctors who testified for him, while admitting that plaintiff's condition did improve during that period, were of the opinion that due to the shock and injuries as well as to exposure at the time of the accident, his recovery had been retarded and that but for the accident his case would be an arrested one now.

There is proof that in December, 1937, more than fifteen months after the accident the plaintiff suffered severe hemorrhages resulting in another serious set back. In the opinion of all the experts however that serious decline in his condition manifested itself entirely too long after the accident for it to be in any way associated with it. It is their testimony that for any ill effects to have followed as a result of the accident it would be necessary for them to have appeared within three months and as according to all the testimony for more than a year following the accident plaintiff showed improvement, it is impossible to reconcile his set back with the theory of reactivity brought on by the accident itself. The district judge concluded on this point that the preponderance of the testimony being to the effect that the accident had no definite influence on the course of plaintiff's disease, the claim for damages in this particular was of too speculative a character and could not be allowed. Our consideration of the testimony leads us to that same conclusion.

Plaintiff was allowed $750 for his other injuries. These consisted principally of a fracture of one of his ribs, said by some of the doctors to have been an incomplete fracture, contusions and abrasions about the body generally. The only physical pain and suffering he endured was that incidental to these injuries. We can very well understand that he must have undergone considerable mental anguish and distress because of the probable consequences which his injuries and shock might have had on his tubercular condition. The amount as awarded therefore can not be said to be excessive. We think that it is fair and reasonable. We do not know whether the district judge meant to include the expenses amounting to the sum of $105 in the amount of the award or not. We think however that plaintiff is entitled to recover those expenses apart from the award as made, and for that reason the judgment will be amended by increasing it to that extent.

For the reasons stated it is therefore ordered that the judgment be amended by increasing the amount awarded from the sum of $750 to the sum of $855, and that as thus amended it be affirmed.