## THOMAS v. SHREVEPORT RYS. CO., Inc.

### No. 5842.

Court of Appeal of Louisiana.
Second Circuit.

Feb. 6, 1939.

Rehearing Denied March 8, 1939.

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellant.

Samuel P. Love, of Shreveport, for appellee.

TALIAFERRO, Judge.

This is a tort action wherein plaintiff, a colored woman, seeks to hold the defendant,

Shreveport Railways Company, in damages for personal injuries alleged to have been sustained by her through the fault of the motorman of the trolley bus on which she was riding as a paid passenger.

At about the hour of six o'clock P. M., January 12, 1938, plaintiff boarded the bus at the corner of Line avenue and Gladstone boulevard in the city of Shreveport. She handed the motorman a fifty-cent piece and requested him to sell her a book of four tickets, the price of which was twenty-five cents. While waiting for the book and the change, she balanced herself by holding with one hand the perpendicular rod which is on the motorman's right side and slightly to his rear. After the motorman handed to her the change and book, less one ticket for her fare, she turned and faced the farther end of the trolley with the intention of immediately proceeding to a seat reserved for colored patrons. At this juncture, it is her contention and testimony, the trolley, which had been moving forward, came to a sudden stop, which caused her to lose physical balance, to release her hold on the rod and to fall violently backward to the floor and against the door through which she had a moment prior entered. She testified that two colored male passengers rushed forward, raised her up and assisted her to a seat in the rear of the trolley, but that no assistance was rendered her by the motorman.

Plaintiff's version of the facts of the accident is substantially corroborated by one of the men who came to her rescue and by two other colored women passengers neither of whom, so far as the record discloses, has any interest in the outcome of the case. There appears no reason for them to color their testimony. If worthy of belief, and there is nothing apparent to discredit them, the testimony of these witnesses, supporting that of plaintiff, certainly makes out a strong prima facie case for her. The only evidence offered by defendant to countervail that submitted by plaintiff is that of the motorman. He was briefly interrogated on behalf of the defendant and simply stated that after plaintiff boarded his trolley the evening of the accident, it underwent no unusual "jolt or jar". Inferentially, he admits that plaintiff experienced some sort of accident while holding to the upright hand rod near him, but says "she never hit the floor at all" and for this reason she did not need his assistance. This testimony is not sufficient to overcome the strong prima facie case made out by plaintiff.

It does not appear that the motorman reported to defendant that plaintiff had an accident on his trolley, but we are constrained to believe he did so. Within three hours after she reached her home, defendant's employed physician, Dr. Rowland, visited her for the purpose of rendering such medical aid as her case required. He made this visit upon the direction of someone connected with or employed by defendant and in addition made two other visits to her. Further visits were not made by this doctor, he says, because defendant did not request him to do so and he did not think her condition necessitated him doing so. If the motorman did not report an accident to the company, we are curious to know why the physician was sent to treat plaintiff. Someone having knowledge that plaintiff did experience an accident of some sort at the time and place she claims, had enough interest in defendant's welfare to communicate this knowledge to it or else the doctor would not have been so promptly directed to visit plaintiff for the purpose of ascertaining the extent of her injuries and of treating her. Whatever the nature of the accident was, someone must have believed it not improbable that plaintiff received injury of a more or less serious character therefrom. If she did not fall and did not release her hold from the upright rod, as the motorman says, no good reason exists for anyone who observed her movements to think she was injured. The converse of this is also true. Dr. Rowland found a slight tenderness below the lower margin of the ribs, posteriorly, and was asked: "What do you attribute the tenderness to?" To which he gave this significant answer: "That is hard to say, because I did not know whether she struck her side or back against the step; perhaps she did in falling, strike her side."

Defendant makes the point and seriously argues in its support that plaintiff did not prove she was injured because of one or more of the specific acts of negligence charged to its operator. We do not find merit in this contention. The petition sets forth that after plaintiff paid her fare and had started to the rear of the trolley to be seated, the motorman "wilfully, negligently and without cause or notice, abruptly stopped said trolley, throwing your petitioner to the floor and steps of the trolley" thereby inflicting the injuries complained

of. It is true that later on in the petition the negligence of the motorman is alleged to consist of four different elements, and it is also true that the testimony does not specifically disclose to which of these elements, or to either, the accident may be ascribed.

In cases of this kind, involving the breach of a contract of carriage, it is only necessary that the injured passenger allege a breach of the contract through the negligence of the carrier's agent and support this allegation by proof of injury while a passenger. Thereafter, it devolves upon the carrier to exculpate itself from the inference of negligence arising from the plaintiff's evidence, if it can, and to overthrow the prima facie case against it consequent to such evidence. Wallace v. Shreveport Railways Company, La.App., 175 So. 86, and cases therein cited.

It may happen, in fact does occasionally happen, that a passenger is injured by a carrier's negligence and the exact cause or character of the negligence be wholly unknown to him.

In the Wallace case, supra, only two persons were on the car when the accident occurred, viz., the plaintiff and the motorman. Their testimony was diametrically opposed. We specifically held that the testimony of the motorman, although presumed to be of equal probity with that of plaintiff, was not sufficient to overcome the prima facie case made out by her testimony, in view of the definite burden in such circumstances, the law imposed upon it as a carrier for hire.

It is argued that the motorman was not required to keep his bus at a stop until plaintiff was seated. The Supreme Court has ruled in keeping with this contention. Sharp v. New Orleans City R. Co., 111 La. 395, 35 So. 614, 100 Am.St.Rep. 488.

It was not primarily the starting of the trolley that produced the accident in the present case, but it being suddenly stopped after once starting, according to the evidence. Had the trolley been suddenly and unusually propelled forward superinducing a jerk, plaintiff would most likely have fallen forward, as happened in the Wallace case.

The sudden checking of the momentum of a motor vehicle automatically has the effect of impelling forward, with more or less violence, unattached objects and persons standing therein. This is what plaintiff and her witnesses say happened.

We see no merit in defendant's plea of contributory negligence.

Dr. Rowland visited plaintiff the night of the accident and on January 14th and 16th. He made a superficial examination of her by lamplight in her humble living quarters, but found no objective evidence of wounds, abrasions or contusions. Due to her color, such could have existed and not then be detected. He says she was *"not seriously injured but badly shaken up"*. He though she should be up and about within ten days. She then complained of painful headaches and of pain between the shoulder blades. He did not treat her for trauma and only on the third visit did he prescribe a sedative to relieve her of insomnia. She was complaining more on this last visit than previously.

Dr. Pirkle was next called in to treat plaintiff. His examination was merely of a casual nature. She was then complaining of pains in the neck and chest. He prescribed for her on the basis of this complaint.

Plaintiff was continuously confined to bed since the accident and her condition not improving, her employer interested himself in her behalf and had Dr. I. F. Hawkins take her case over. He made a close physical examination of her on January 27th and found a number of minor bruises on and about her body and marked tenderness over the last two ribs in the mid-axilary line of the left side. These ribs were fractured. He also found soreness in the back over the region of the kidneys. She was then complaining of pain in the back. A laboratory test revealed pus cells in the urine. The accuracy of the test was confirmed by additional ones. Dr. Hawkins could not definitely say that this kidney condition was due to the original injury but thought it was attributable to it. He was certain such a trauma could produce the condition. In this latter opinion, Dr. Rowland concurred.

Dr. Hawkins' treatment of plaintiff continued until the date of trial, 78 days after the accident. Nearly all of the soreness had disappeared and her general condition was much improved, although she was then unable to resume her former duties as cook, nurse and washerwoman. At times the doctor required her to go to bed. She suf-

fered considerable discomfort and pain to the time of trial. Dr. Hawkins was unable to venture a guess as to the duration of her disability.

When plaintiff was injured she was receiving a weekly wage of $4.50, plus meals and minor perquisites usual to the character of her employment. She is due Dr. Hawkins $50 for services and medicines. The lower court awarded her $275. In view of the facts of the case, to which we have given careful consideration, we are constrained to think this award inadequate. An increase of $125 is due her.

For the reasons herein assigned, the judgment appealed from is amended by increasing the amount thereof to Four Hundred ($400) Dollars; and as thus amended said judgment is affirmed, with costs.