In this suit plaintiff, a colored woman, seeks to recover $4,000 as damages for personal injuries which she claims to have sustained as the result of an accident which happened while she was a pay passenger on a motor bus belonging to the defendant company and which was being operated by one of its employees. She claims that she received injuries to her back, her right leg and her right hip as the result of the bus operator suddenly and violently bringing the bus to a stop and then starting it forward in such a manner as to throw her, as she was about to seat herself, against an iron hand bar which ran across the seat.
It is conceded in the pleadings that the defendant was a common carrier and operated passenger busses as such, and that at the time plaintiff claims she was injured she had paid her fare to the operator of defendant's bus, and plaintiff contends that the doctrine of res ipsa loquitur is applicable and that under the said doctrine defendant should be held liable to plaintiff, unless defendant can conclusively rebut the presumption of negligence raised by said doctrine.
Plaintiff contends in the alternative that if the said doctrine is not applicable, then and in that event she relies upon these certain specific acts of negligence on the part of the driver set forth above.
The defendant denied that plaintiff was injured, and denied that the operator of the bus was guilty of any fault. It made no special plea of contributory negligence on the part of the plaintiff.
Upon these issues, and after trial on the merits, there was judgment in favor of the defendant, rejecting plaintiff's demand and dismissing her suit. Plaintiff has appealed.
It is our understanding of the law relative to such cases that the plaintiff must show an accident causing an injury, and when plaintiff shows such, a prima facie *Page 174 
case has been made and the plaintiff need not prove anything else. The burden is then imposed on the defendant to show that it was free from negligence which might have caused the accident and injury; and if defendant fails to sustain that burden, the plaintiff is entitled to recover. Cusimano v. New Orleans Public Service, 170 La. 95, 127 So. 376; Wallace v. Shreveport Rys. Co. La.App., 175 So. 86; Thomas v. Shreveport Rys. Co., Inc., La.App., 187 So. 822; Hughes v. Baton Rouge Elec. Co., La.App., 188 So. 473.
There are therefore two questions involved in this suit; first, whether or not there was an accident and injury to the plaintiff while she was a passenger on the bus, and, second, if plaintiff did sustain an accident and injury, whether or not defendant has shown that it was free from negligence or fault causing such accident and injury.
East Boulevard is a street in the City of Baton Rouge, running north and south from North Boulevard to Washington Street, and Washington Street runs east and west and forms the southern limits of the City of Baton Rouge. A continuation of East Boulevard from there on south is Texas Street. Washington Street was the end of the bus driver's route.
The evidence is to the effect that at about 5 o'clock of the afternoon in question, plaintiff was waiting at the intersection of Texas and Washington Streets to board defendant's bus. The operator of the bus had driven southward on East Boulevard to Washington Street, thence proceeded eastward on Washington Street, stopping his bus some 10 feet from the east curb of Texas Street. The plaintiff boarded the bus at that point. In order that the bus might return to the City of Baton Rouge, the bus driver had to back on Washington Street to a point west of Texas Street, stop, and thence go forward on Washington Street and thence north on East Boulevard.
Plaintiff testified that she boarded the bus on Washington Street; that she entered, paid her fare, and started to walk to the rear of the bus, wherein seats for colored people were reserved, and that the bus then started in its backward motion without interruption until it stopped on the west side of Texas Street on Washington Street. She claims that she had not had time to seat herself between the time that she paid her fare and the stopping of the bus on Washington Street for its forward motion. She testifies that when she was preparing to sit down in one of the rear seats, the bus started forward by a "big jerk", causing her to be thrown against the part of the seat on which was located an iron hand hold. In explanation of the reasons why she did not protect herself in the backing movement, she states that the accident only happened when the bus started its forward operation and that she did not expect the bus to start off in such a jerking way. She states that she had boarded the bus at that point many times before and had knowledge of its maneuvers and that the forward movement of this bus was different from the usual method of starting the bus. She states that she was injured on her right side, causing her leg to pain. She further testified that at the time she received such injury she exclaimed: "I sure hurt my back", which remark, she states, should have been heard by the bus driver. Plaintiff was on her way to see a dentist, whose office was on Government Street, and in order to reach her destination she had to obtain a transfer to another bus. She testified that she met this bus on Government Street, and had trouble getting out of the bus on which she had been riding to the transfer bus and limped while making the transfer. She made no complaint to the bus driver at the time of obtaining the transfer, nor when she left the bus, nor to the transfer bus driver.
The bus driver testified that he stopped his bus on Washington Street, some ten feet east off of Texas Street, at which point he changed his route sign and attended to his fare box reading for his northern journey, taking about one minute therefor. That plaintiff boarded his bus while he was stopped; that he then proceeded to slowly back the bus; that before completing the said backing, he was forced to await the passage of an automobile going north on Texas Street; that thereafter he again began to slowly back his bus to a point where he had cleared Texas Street, and stopped on Washington Street; that plaintiff was standing while he was backing and was fully seated when he started forward; that he then looked both north and south before proceeding forward on Washington Street and turned north on East Boulevard in the direction of Baton Rouge. He further testified that the plaintiff made no complaint to him of ever having received any injury on his bus. He denies that he started his bus in any unusual way, also denying that the bus was started in a jerk. He states that he gave a transfer ticket to the plaintiff in *Page 175 
between Washington Street and Government Street; that upon approaching Government Street he signalled to the Government Street bus that he had a transfer passenger and that that bus awaited him at the corner of Government and East Boulevard; that plaintiff did not complain to him, at any time, of having received an injury on his bus; that plaintiff left his bus and hurriedly met the other bus, showing no sign of any injury; and that there were no other passengers on the bus at the time of this alleged injury.
Plaintiff had had a tooth extracted some two or three days prior to the day of the alleged injury. On the day of the alleged injury, it was her intention to visit her dentist for the purpose of receiving a post-operative treatment and did so. She contends that she returned to her home thereafter, and on the following day went back to her work as a domestic servant in the home of Mrs. Matkenson. She claims that her back pained her to such an extent that she was unable to do her work. She quit work at noon, and went back to her home, where she called a taxi to take her to the bus company's barn outside of Baton Rouge. There she reported the alleged accident and injury at about 3:30 P.M.
Following this report, Dr. T. Jeff McHugh, on behalf of the bus company, visited the plaintiff at her home. He found the plaintiff in bed complaining of pain in her right side. On examination he found no swelling, no discoloring and no bruises. He found that a jaw tooth had been extracted, and the cavity had not healed. He also states that another molar tooth was in bad condition and should be extracted. He is of the opinion that plaintiff's complaints could be attributed to neurotic or rheumatic pains resulting from focal infection. He felt this to be more probably the cause, as there was no localization of the pain and no objective evidence of injury. He visited the plaintiff at her home on four different occasions and states that the plaintiff visited his office about four times. He finally discharged her on February 24, 1940, as being fully cured. He prescribed for her certain medicines, giving her a silicilate and also a rubbing compound. The silicilate was for mild pains, especially neuritis and rheumatism. He states that it is a close kin to aspirin. Plaintiff remained under his care from January 6 to February 24, 1940.
Plaintiff introduced her employer, Mrs. Matkenson. Mrs. Matkenson testifies that plaintiff was a very good worker prior to this alleged accident; that on the following day after the alleged accident, plaintiff reported to work complaining of pains; that a day or two thereafter she visited the plaintiff and found her in bed; that she offered to procure a doctor for plaintiff, but that plaintiff refused, stating that she was perfectly satisfied with Dr. McHugh's treatment; that she and her husband visited plaintiff on two or three different occasions and always found her in bed.
Plaintiff had her brother and her sister as witnesses. Their testimony was to the effect that she was unable to return to her work for some 8 or 9 weeks, and that plaintiff remained in bed most of the time.
On the first question involved in this case as set forth above, we are of the opinion that the plaintiff has not proved that she met with an accident and received an injury. Our reason for so stating is that had she had a violent blow about her body or that had she been injured in any way, she would have made a complaint to the bus driver at the time that she obtained the transfer and also at the time that she left the bus. We are not impressed by her excuse for not so reporting, the excuse being that she thought it was only a slight blow she had received and of no consequence. She did not make any complaint to the other bus driver; the testimony of this bus driver being that plaintiff walked in an ordinary way and did not complain to him of any pains when she boarded the bus. We do not doubt that that night or the following day plaintiff suffered pain; but it is our opinion, and the testimony of Dr. McHugh fully justifies this statement, that such pains as she may have suffered that night and thereafter were caused by the condition of her teeth, the extraction of one and the need for the extraction of another molar tooth, which condition then caused neuritis or rheumatism.
On the second question, that is, the negligence of the bus driver, we are of the opinion that defendant has fully met and rebutted such presumption as would arise against it had plaintiff suffered an accident and injury. The plaintiff did not explicitly state how violently the bus jerked, or how it started, merely stating that it started in a "big jerk", not in its usual way. The bus driver positively states that he did start his bus in the usual careful manner required. It further appears to us that even on the plaintiff's own testimony she had *Page 176 
ample time to reach a seat and be seated by the time that the bus driver started his forward motion. She admits that the bus was backing at about 5 miles per hour; she does not complain as to the manner of backing the bus. Certainly when the bus stopped on the west of Texas Street on Washington Street, she had had ample time to be fully seated before the forward motion. As stated by us in Hughes v. Baton Rouge Electric Co., supra, a carrier is not the insurer of the passengers' safety. It is only required to exercise a reasonable degree of care. It is not required to hold its conveyance until the passenger is seated, and is not liable for injuries received by the passenger in the act of taking a seat in consequence of starting a conveyance, unless it is started in a violent, unusual or reckless manner, and it has been proven that such was not the case herein.
We are not favored with written reasons for the holding by the trial judge, but he necessarily must have come to the conclusion that the plaintiff had not received an injury or that the bus driver was not negligent in the operation of his bus. And finding no manifest error committed by the trial judge on either conclusion, we therefore affirm his judgment, and it is so ordered.