AYRES, Judge.
In this action a fare-paying passenger on a bus of the defendant, City of Alexandria, seeks to recover damages for personal injuries, pain and suffering and for permanent disability allegedly sustained in an accident of October 10, 1956. The plaintiffs are the passenger, Lillian Llorens, and Leo Llorens, her husband. The latter, as head and master of the community of ac-quets and gains existing between him and his wife, seeks recovery of the hospital and medical expenses incurred as a result of the injuries sustained by his wife. The defendants are the City of Alexandria and its insurer, United States Fidelity and Guaranty Company.
The accident was allegedly caused by the sudden starting of the bus with a severe jerk, which caused plaintiff, Lillian Llorens, to be thrown backwards from a standing position taken by her to signal her intention of departure at the next street intersection. She was allegedly thrown into her seat, twisting her knee and dislocating the patella. The defendants deny any unusual movement of the bus and contend that plaintiff, while standing, merely lost her balance and fell backward into her seat.
After trial, plaintiff, Lillian Llorens, was awarded $1,500 as compensation for her pain, suffering and disability. The husband was awarded $132 for medical expenses incurred and $100 for anticipated future medical expenses. From the judgment plaintiffs appealed, contending the awards were inadequate and praying that they be increased. Defendants appealed, denying liability and, in the alternative, contending that the awards were excessive and should be reduced.
Defendants concede the occurrence of the accident but contest the manner in which *344 it allegedly occurred. The record discloses that on the morning of the accident, plaintiff, Lillian Llorens, boarded the bus to go to the City Hall to pay utility bills. She occupied a seat in the rear of the bus opposite the rear door, after which the bus proceeded in a westerly direction along Fouth Street and, on arriving at the intersection with Johnson Street, stopped to discharge passengers. Plaintiff’s version is that, after the passengers were discharged and the door closed but before the bus started up again, she stood, holding the back of the seat with her right hand, and reached for the cord to signal her intention to leave the bus at the next stop, whereupon the bus suddenly started with a jerk, causing her to be thrown backward into her seat and twisting her left knee and dislocating the patella thereof; that she quickly grasped her knee, pulled it back into place, and gave an outcry of her pain and distress. The bus driver, who was hard of hearing, not having seen the accident himself, was informed thereof by another passenger calling to him, whereupon the bus was stopped in the middle of the block and the driver inquired of plaintiff as to the occurrence and nature of her injury, as well as her name and address. Although plaintiff informed the driver she had fallen and hurt her knee, he was not impressed with the seriousness of the injury sustained. Plaintiff, however, remained on the bus until it reached DeSoto Street, two blocks from the scene of the accident, where she departed and secured a taxi to convey her home.
As to the occurrence of the accident and the manner in which it happened, only two witnesses testified, the plaintiff, Lillian Llorens, and the bus driver, L. L. Lemoine. The version of the accident as given by the plaintiff is contradicted by the driver, who testified there was no sudden or unusual jerk or movement of the bus in starting from its stop at the intersection of its route with Johnson Street. His driver’s report of the accident, however, discloses there were eight passengers on the bus at the time, whose names and addresses the driver did not secure, and none were called as witnesses by either plaintiffs or defendants because, from plaintiffs’ standpoint, they were unable to secure the names and addresses of such persons, although due diligence was used to locate them, even through an advertisement in a local newspaper. Therefore, the only evidence in refutation of plaintiff Lillian Llorens’ testimony is that of the motorman himself.
The facts of the instant case are remarkably similar to the facts in Wallace v. Shreveport Railways Company, La.App., 175 So. 86. There plaintiff made it certain she fell because she lost her balance by the car starting up with an unusual forward motion or jerk. She, as the plaintiff here, had ridden on the defendant’s cars and/or buses and was well acquainted with their movements after coming to a stop and discharging or taking on passengers. There-it was held she had established by her own-testimony a prima facie case of negligence against defendant by showing that she was a paid passenger on its car and was injured' thereon. The burden of proof, after a prima-facie showing, strictly speaking, did not shift but it did then devolve upon defendant to adduce proof of lack of negligence-on its employee’s part sufficient in probative weight to overcome plaintiff’s case, if it would escape liability for damages to its. passenger. 10 C.J., Carriers, § 1424, p.. 1021-1022; 13 C.J.S. Carriers § 764d, p> 1448-1451. The latter authority states the-general rule as follows:
“The maxim, Res ipsa loquitur, which is recognized to some extent in the proof of negligence in general, applies to common carriers, and is of peculiar application in actions for simple negligence against carriers of passengers,, such as railroad or street railroad companies, and in a number of cases the rule has been broadly stated that the-happening of an accident to the passenger, at least where it appears to< have occurred without fault on his- *345 part, gives rise to a presumption of negligence on the part of the carrier, so that the passenger makes out a prima facie right to recover for personal injuries received during transportation, by proof that he was at the time of receiving the injury a passenger; that an accident occurred, and that his injury resulted therefrom, and thereby casts on defendant the burden of rebutting such presumption.” (Emphasis supplied.)
This general rule has been followed in numerous decisions of the Supreme and appellate courts of this State, including, to mention only a few of the later decisions, the following: Wallace v. Shreveport Rys. Co., La.App., 175 So. 86; Buswell v. Missouri Pacific Transp. Co., La.App., 184 So. 399; Thomas v. Shreveport Rys. Co., La. App., 187 So. 822; Owens v. Monzingo, La. App., 191 So. 581; Jones v. Baton Rouge Electric Co., La.App., 192 So. 539; Gonzales v. Toye Bros. Yellow Cab Co., La. App., 198 So. 379; Anderson v. City of Monroe, La.App., 2 So.2d 499; Valdry v. Baton Rouge Bus Co., Inc., La.App., 5 So. 2d 173; McFarland v. City of Monroe, La. App., 11 So.2d 19; Grant v. Baton Rouge Bus Co., Inc., La.App., 15 So.2d 123; Bailey v. Owen, La.App., 19 So.2d 299; Creech v. Shreveport Rys. Co., La.App., 43 So.2d 295; Kendall v. New Orleans Public Service, Inc., La.App., 45 So.2d 541; Hopper v. Shreveport Rys. Co., La.App., 51 So.2d 845; Baker v. Shreveport Rys. Co., La.App., 68 So.2d 228; Hayes v. Illinois Central Railroad, La.App., 83 So.2d 160; Harris v. Shreveport Rys. Co., La. App., 83 So.2d 517.
The rale was early announced by the Supreme Court through Justice Taliaferro in Julien v. Captain and Owners of Steamer Wade Hampton, 27 La.Ann. 377, that:
“ ‘Common carriers are bound to carry their passengers safely and securely, and to use the utmost care and skill in the performance of their duties.’ * * * ‘And, of course, they are responsible for any, even the slightest, neglect.’ * * * ‘The burden of proof is on the defendants to establish that there has been no disregard whatever of their duties, and that the damage has resulted from a cause which human care and foresight could not prevent.’ ”
This holding has been definitely adhered to in a long line of cases, of which the following are some of the most prominent early decisions: Patton v. Pickles, 50 La. Ann. 857, 24 So. 290; Le Blanc v. Sweet, 107 La. 355, 31 So. 766, 90 Am.St.Rep. 303; Lehman, Stern & Co., Ltd., v. Morgan’s Louisiana & Texas R. & S. S. Co., 115 La. 1, 38 So. 873, 70 L.R.A. 562, 112 Am.St. Rep. 259, 5 Ann.Cas. 818; Spurlock v. Shreveport Traction Co., 118 La. 1, 42 So. 575; Haynes v. Louisiana Ry. & Nav. Co., 140 La. 1019, 74 So. 538; Hopkins v. New Orleans Railway & Light Co., 150 La. 61, 90 So. 512, 19 A.L.R. 1362.
But, as pointed out by this court in Wallace v. Shreveport Railways Company, supra, the rule announced in the Julien case was modified in Cusimano v. New Orleans Public Service, Inc., 170 La. 95, 127 So. 376, 377, to the extent that, in establishing its freedom from negligence as a cause of the breach of the contract of carriage, it was npt necessary for the carrier to affirmatively prove the exact cause of the breach. In the Wallace case this court stated:
“Therefore, in view of the rule so definitely announced in these decisions, a defendant is required to prove, by a preponderance of evidence, freedom from negligence as a cause of the breach of the contract of carriage, when once the plaintiff has made out a prima facie case of negligence; and, in this respect, such a defendant is in practically the same position, after this prima facie showing has been made, as a plaintiff occupies in an ordinary tort action. He must exonerate himself from negligence and overcome the presumption against him by a preponderance of the testimony.” 175 So. 88.
*346 Therefore, where the motorman is the only witness contradicting the passenger’s version of the accident, although of equal credibility with the plaintiff, it could only be held that defendants have not sustained their burden of proof and, therefore, that a conclusion of defendants’ liability is inescapable. Wallace v. Shreveport Railways Company, supra. Wherefore, defendants should respond to plaintiffs in damages for the injuries sustained.
In a determination of the issue as to the quantum of damages, we deem it unnecessary to review in detail the testimony and/or the depositions of the eight physicians and orthopedists who testified in the case. We are favored with such a detailed statement by our learned brother of the district court, but, for the purpose of this opinion, a summary thereof appears entirely adequate.
From the evidence it could only be concluded that plaintiff suffered an injury at the time of the accident. The testimony of Dr. James E. Hines, her family physician, and of several lay witnesses supports her contention that prior to the accident she had experienced no trouble or difficulty with her knee. On the day of the accident Dr. Hines examined plaintiff and found her left knee swollen and discolored. That plaintiff sustained a recurrent dislocation of the patella of the left knee could only be concluded from a consideration of the whole of the medical expert testimony. This was the diagnosis of both Dr. Paul M. Davis and Dr. Scott Hamilton, orthopedic surgeons. Opposed to this view, however, were the opinions of Dr. Daniel M. Kings-ley, also an orthopedic surgeon, and Dr. Robert P. Foster, a general practitioner, who found no objective symptoms supporting plaintiff’s complaint. The X-rays taken by Dr. Davis approximately three months following the accident disclose that the left patella was dislocated. That the condition is a most difficult one to diagnose was the consensus of opinion of all the physicians who testified, the difficulty being attributable, first, to whether the patient is cooperative and relaxed so as to permit the manual moving of the patella from its normal position. It was testified that tension, applied either voluntarily or involuntarily to the leg muscles, will tend to rigidly stabilize the position of the patella, thus preventing manual manipulation. Secondly, the condition being of a recurrent nature, there were probably periods of time when the knee would appear normal.
The conclusion reached by the trial court,, in which we concur, is that plaintiff’s injury is of an indefinite duration, not necessarily permanent, during which she will not have the full use of her knee, and the possibility is that she will experience occasions-when the patella will slip out of its position, precipitating pain, attended by a temporary total loss of the use of the knee.
None of the physicians testifying for plaintiff ventured an approximation of the time in either months or years plaintiff might suffer from this condition. Dr. Davis expressed an opinion that the condition was permanent and that the patella should be surgically removed, although even then there would remain, in his opinion, some residual permanent disability. Dr. Hamilton recommended treatment through minimum activity but could give no estimate as to the duration of plaintiff’s injury. Neither Dr. Hamilton nor Dr. Kingsley recommended removal of the patella. Dr. Kings-ley was of the opinion that a recurrent dislocation of the patella will most likely continue to reoccur, and that if such condition has not healed in six to eight weeks, it would likely never heal, and he says there is a tendency for this patella to slip out of position, and, if it actually goes out of position, the pain is such that the knee will give way and the patient will fall— the knee catches, locks, gives way, and a fall is inevitable.
This condition, according to plaintiff’s testimony, has reoccurred twice since the accident. The first was on June 16, 1957, and as a result of which plaintiff sprained or twisted her ankle. On examination *347 two days later, Dr. Brown found, however, no swelling or effusion of the knee, The second occasion was on June 30, 1957, which was equally without consequence. That plaintiff suffered pain for a few weeks following the accident but not of a severe nature, attended with swelling of the knee, is fully established by the record. The award of $1,500 to compensate plaintiff, Lillian Llorens, for her pain, suffering and disability appears neither excessive nor inadequate under the facts and circumstances of this case. Wright v. State Farm Mut. Auto. Ins. Co., La.App., 57 So.2d 767; Tyler v. Marquette Casualty Co., La.App., 79 So.2d 376; Thomas v. Shippers’ Compress & Warehouse Co., Inc., La.App., 158 So. 859.
The defendants, however, contend that the allowance of $100 for future medical expense was unauthorized and is not supported by the record since no proof was made as to the probable cost of or the necessity for future medical treatment, and that the necessity for such treatment, as well as any amount therefor, is conjectural. This is a meritorious defense. It was so held in Crowther v. Aetna Casualty & Surety Co., La.App., 96 So.2d 94, 95.
Accordingly, the judgment appealed is amended by reducing the award for medical expenses in favor of plaintiff, Leo Llorens, to $132, and, as thus amended, the judgment appealed is affirmed at defendants-appellants’ cost, the liability of the •defendant, City of Alexandria, as to costs being limited, however, to the stenographer’s costs for taking testimony. LSA-R.S. 13:4521.
Amended and affirmed.