This is a suit based on an accident sustained by plaintiff while alighting from a bus owned and operated by defendant in which she had been a paid passenger. She alleges that the accident was caused by the negligence of defendant's bus operator, and claims $2,500 for physical injuries, shock, mental pain and anguish, $45 for loss of wages, and $8 for medical expense, as the results of the accident.
The plaintiff, a colored woman, was a paid passenger on one of the motor buses belonging to and operated by the defendant, and which bus was travelling east on North Boulevard. Before the bus reached the intersection of North Boulevard and St. Joseph Street, the plaintiff gave the proper signal to the bus operator to stop at the corner of North Boulevard and St. Joseph Street. In response to her signal, the bus operator pulled over to the curb for the purpose of permitting plaintiff to get off from the bus to the sidewalk.
Plaintiff alleges that as the bus approached the intersection she got up from her seat and started towards the door to get off, and as she approached the door, the bus operator, by mechanical means, caused the door to open so that she could get off. *Page 124 
Plaintiff further alleges that as she "descended the steps of the said bus, and was about to step from the bus steps to the curb, the driver or operator thereof did not keep the said bus at a complete stop, but permitted the said bus to move and at the same time caused the door to slam, thereby catching the end of petitioner's dress in the door", which caused her to be "thrown off her balance", and "to fall on the curb", resulting in causing her to be seriously injured, and which action constituted negligence.
The defendant, for answer to plaintiff's petition, denies all of the allegations relative to the manner in which the accident happened, and denies that it was guilty of any negligence whatever contributing to the accident and the alleged resulting injuries.
Upon these issues the case was tried, resulting in a judgment in favor of the plaintiff in the sum of $1,553. Defendant applied for and was granted a rehearing. On rehearing, the trial judge reduced the award by $500, and rendered judgment in favor of plaintiff for $1,053, as follows: $45 for loss of wages; $8 for expenses, and $1,000 for physical pain, mental anguish and suffering. Defendant has appealed. Plaintiff has answered the appeal and prays that the amount be increased to the original amount demanded.
The plaintiff contends that the proximate cause of the accident and the resulting injuries were the failure of the bus operator to keep the bus at a complete stop until she could alight therefrom, and the premature slamming of the bus door, which caused her dress to be caught in the door, all of which caused her to fall. The defendant contends that it had nothing to do with plaintiff's fall in that the bus operator brought the bus to a normal stop near the curb, opened the door of the bus, remained stationary while plaintiff got off, and did not close the door nor move the bus until after the accident or fall of the plaintiff; that plaintiff's fall was due to her own clumsiness, negligence, or inattention to what she was doing, and that she simply lost her balance and fell.
This case involves the application of certain rules of law relating to the duties and obligations of a common carrier to a passenger aboard one of its conveyances. Under the contract which arises out of the relationship between them, a carrier owes to the passenger the duty to safely transport him over its lines or routes from the place where he boards its conveyance to the place of his destination and there safely to discharge him, and it is liable for the slightest neglect or lack of care resulting in injury to the passenger. After a passenger establishes that he was a paying passenger and was injured while occupying such relationship, the burden of proof shifts to the defendant to show lack of negligence. These rules of law are not disputed by the defendant. The defendant contends that the accident did not happen while the relationship of carrier and passenger existed. However, if the accident did take place while the relationship of carrier and passenger existed, then it contends that it has discharged the burden of proof placed upon it.
There are therefore two questions involved: First, whether or not there was an accident and injury to the plaintiff while the relationship of carrier and passenger existed, and, second, if there was such an accident or injury, whether or not defendant has shown that it was free from negligence or fault causing same.
We have the testimony of seven witnesses as to the manner the accident and injury happened. These are the plaintiff herself; another colored woman by the name of Maggie Dunn, a fellow passenger on the bus; J.B. Worsham, a white man, also a fellow passenger on the bus; and Parker Flynn, a white man, a pedestrian on the sidewalk near the situs of the accident all of whom testified in plaintiff's favor. Testifying for the defendant we have G.W. Saltzman, the bus operator; Nelson Parr, a young white man, a fellow passenger on the bus; and Mayola Watkins, a young colored woman, also a fellow passenger on the bus. There were only six persons on the bus, including the operator and plaintiff.
The gist of plaintiff's testimony is that when she gave the signal for the bus to stop, the operator pulled to the curb and stopped his bus. She then got up from her seat and walked to the front and to the door, the door being open, and then got on the steps. While she was on the steps about to alight, the bus operator closed the door, which caught her dress, and he put the bus in motion, all of which caused her to fall. She states: "Before I could get my foot to the ground I was falling". She states that while she was falling the bus was moving. After she had completely *Page 125 
fallen, the bus backed back to the place in the street where she had fallen and the operator opened the door and asked her if she wanted to be taken to the hospital, which offer she declined.
Maggie Dunn was sitting in the third seat from the front on the right hand side, which was the same side the door was on. The gist of her testimony is that the bus slowed down, but did not completely come to a stop at the corner, and only came to a complete stop after the plaintiff had fallen and only after it had crossed St. Joseph Street. She states that the door was opened and as the plaintiff was in the act of stepping off of the bus, the operator closed the door which caught plaintiff's dress. She also states that the operator backed to where plaintiff had fallen.
J.B. Worsham was sitting in the seat just back of the operator of the bus. The gist of his testimony is that the bus stopped three or four feet from the curb; that plaintiff was standing on the steps to get off in the street; that the bus "lunged" forward or backward, throwing plaintiff off balance, causing her to fall; that the bus stopped within a foot or two from where plaintiff fell. He saw plaintiff fall and saw her hit the curb; that the operator offered the plaintiff to take her to the hospital, which she declined.
Parker Flynn was a pedestrian on the sidewalk near where plaintiff fell. He is a brother-in-law of J.H. Edmondson for whom plaintiff worked and to whose house she was going on the morning of the accident. This house was the second house on North Boulevard east of the intersection of St. Joseph Street. He was walking westerly, had crossed the intersection and was about twenty feet from the intersection when the bus passed him; as the bus passed him he thought he had recognized the plaintiff. He states that he turned around to see if it was the plaintiff, and as he did so, he saw the bus in motion and plaintiff falling. He picked up the plaintiff and then left on account of having an appointment up town. From his testimony, we gather that he would want to leave the impression that plaintiff fell from the door and not from the steps. He states, "It looked like she was stepping out of the door". However, he is emphatic that the bus was in motion when he saw the plaintiff falling.
G.W. Saltzman was the bus operator on the day of the accident. His testimony is that upon receiving the signal to stop, he slowed down his speed, pulled into the curb and parked his bus about eight inches from the curb, and opened the door. Plaintiff came to the front, alighted safely, and did not slip and fall until after she was on the ground. His bus remained stationary and the door remained open until after the fall of plaintiff. He offered the plaintiff medical assistance, which was refused. Thereafter he passed accident cards to the passengers to be signed; after obtaining these cards, and seeing plaintiff get up and go on her way, he then closed the door and moved away.
Nelson Parr was sitting on the first seat on the right side of the bus and next to the door. His testimony is that the bus came to a complete stop about six or eight inches from the curb; that plaintiff came to the front of the bus, got on the steps by putting her two feet thereon, and thereafter "she put one foot on the ground and as she was putting her second foot on the ground she lost her balance some way and fell". At that time, he says that the bus was perfectly still; that the bus did not start as she was getting off nor did the bus operator close the door; that the stop was a normal one; that in stopping, the bus did not give any unusual jerk or jolt. He is positive that the bus did not cross St. Joseph Street and then back up to the scene of the accident. He is positive that the bus door did not close on plaintiff's dress. He states "* * * from the time the bus driver opened them (doors) until Fanny (plaintiff) left and was going to her destination the doors were never closed". However, he is equally positive that the plaintiff went down St. Joseph Street rather than North Boulevard, and that when the door was closed and the bus started again plaintiff was down St. Joseph Street "fifteen or twenty yards, going south".
Mayola Watkins was seated in the rear of the bus on the left hand side. She testified that she did not see plaintiff fall; that the only thing she knew about the accident is that the bus came to a stop and remained stopped for some time with the doors open, and that she saw the plaintiff walking off "bent forward holding her back" in an easterly direction, or east on North Boulevard. Her attention was called to the fact that some one was hurt; that the door of the bus was not closed and the bus put into motion until plaintiff was four or five feet away. *Page 126 
It can readily be seen that the evidence is conflicting. The only proven fact is that plaintiff fell, resulting in injury. The burden of proof then is on the defendant to show by a preponderance of the evidence the lack of the least negligence on its part. The negligence charged to the defendant is the failure of the bus operator to stop the bus and keep it still until the plaintiff could alight. Has the defendant discharged itself?
The trial court in a well reasoned written opinion, in which he clearly and concisely analyzes the testimony of each witness, adroitly states: "If we are to believe the testimony of the driver Saltzman, the passengers Nelson Parr, and Mayola Watkins, the answer must be in the affirmative. On the other hand, if we are to believe the testimony of the plaintiff, of Maggie Dunn, J.B. Worsham and Parker Flynn, the answer must be in the negative". After a discussion of apparent conflict in the testimony of some of the witnesses for both the plaintiff and the defendant impairing somewhat their credibility, the trial judge concludes: "Applying the rule which prevails in such circumstances, that is, that the defendant must show that it was free from any negligence which might have caused the accident, I must hold that it has failed to do this by a preponderance of the evidence, and, therefore, must be held liable."
After a thorough study of the record, and the argument of counsel, both orally and in brief, we cannot point to any manifest error in the quoted finding of fact. This is one of those cases where the rule applies that the trial judge is better able than the appellate court to decide who should be believed. We affirm his findings of liability.
As to the quantum of damages, the $8 allowed for medical expenses and the $45 for loss of wages are not disputed. The only question disputed is the amount awarded for the physical injuries, pains and sufferings. The plaintiff contends that the judgment should be increased to $2,500, the amount prayed for, while defendant contends that the amount should not exceed $500.
Plaintiff is a colored woman 67 years of age and stockily built. Prior to the accident it appears that she was a good worker, never complaining of any illness or pains. However, the evidence shows that she had hypertrophic arthritis, which is common with most people of her age. It further appears that the fall received by the plaintiff caused her immediate great pains; in fact, one of the defendant's witnesses states that she left the scene of the accident "all bent over". The evidence shows that she lost nine weeks' work. She has no permanent injury. Undoubtedly the accident caused the arthritis to be more painful. At the time of the trial she still complained of pain. It appears to us that an award of $700 for the pains and suffering would be ample. The judgment will necessarily have to be reduced by $300.
For these reasons, the judgment appealed from is amended by reducing the total amount awarded to the sum of $753, and as thus amended, it is affirmed. Plaintiff to pay the costs of this appeal, all other costs to be paid by defendant.