On August 6, 1942, D.W. Weeks, a resident of Texas, was operating a bus line under the trade-name of Texas Louisiana Coaches, from Jasper Texas, through Merryville, De Ridder, Sugartown, Pitkin and Oakdale, to Ville Platte, La., under a certificate from the Louisiana Public Service Commission. On that day Weeks borrowed a 1937 Ford bus from F.S. Whittlesey, a resident of Jasper, Texas, who also operated a bus line, known as the East Texas Motor Coaches, for the purpose of making the trip on that date, since the bus usually used for the route was in bad condition. The bus was driven by C.F. Pruit, Mr. Weeks' regular driver, and arrived in De Ridder behind schedule. At De Ridder the bus was boarded by Mr. Wm. Henry Matthis, who had purchased a regular passenger ticket at De Ridder for Pitkin, La. The bus proceeded from Oakdale to Sugartown, a distance of about 20 miles, the first two miles of which are paved and the remaining distance of which is dirt and gravel, and upon arriving at Sugartown it met an Army convoy, consisting of various army vehicle, including jeeps and half track tanks. This convoy was met at a road intersection, and the bus driver stopped until the convoy had passed, or possibly a part of the convoy had passed, and thereupon entered the lane of travel in which the convoy was proceeding. The weather was clear and bright, but the atmosphere was very dusty, due to the dryness of the dirt and gravel road and the heavy traffic thereon, to-wit, the army convoy as well as private automobiles. Upon entering the convoy the bus driver began *Page 346 
passing some of the jeeps. According to his testimony he would swing out and pass one jeep and then fall back in line, and again swing out and pass another jeep, and again get back in line, although there is testimony to the effect that he traveled at a rapid rate of speed and managed to pass several vehicles at one time before swinging back in line. In any event, after traveling with the convoy to a point about one mile northeast of Sugartown, and approximately 50 yards beyond or north of a bridge over Sugar Creek, the bus collided with great force in the rear of a half track tank, causing Mr. Matthis, the passenger, a well as other passengers, to be severely jolted. Mr. Matthis sustained injuries including a cut of his tongue, loss of his front teeth and breaking of his jaws and he was knocked unconscious. He was carried to a hospital in De Ridder, where he later regained consciousness, but continued to suffer apparently extreme pain from his injuries, until two days later, when he died in the presence of his nine children and sole heirs, with whom he was never able to communicate except by signs, due to the nature of his injuries.
On April 7, 1943, these nine children, as forced heirs of the said William Henry Matthis, filed this suit against the Texas Louisiana Coaches, as a foreign corporation domiciled in Texas, and its insurer, the Highway Insurance Underwriters, also as a foreign corporation domiciled at Austin, Texas, for damages sustained by them as a result of the death of their said father, setting forth that because of their loss of companionship, the mental anguish and suffering sustained by them as a result of their father's condition and the pain and suffering of their father before his death, all of which resulted from the accident caused by the negligence of the bus driver, they were entitled to recover the sum of $225,000.
On April 26, 1943, the Highway Insurance Underwriters, one of the defendants, appeared and answered, in which answer they admitted that they were a foreign corporation domiciled in Texas and authorized to do insurance business in Louisiana, and stating that it had issued a policy of insurance to F.S. Whittlesey operating under the name of East Texas Motor Coaches, guaranteeing to indemnify him from any damages resulting from an accident causing either injury or death, not to exceed $5,000 for any passenger, which policy was in force on the day of the accident; that the bus involved in this accident, owned by Whittlesey, was being used by D.W. Weeks doing business under the trade name of Texas Louisiana Coaches, with Whittlesey's consent, but without its consent or knowledge, as Whittlesey's insurer, and that the insurance policy provided that said bus was to be used only within the State of Texas and only on roads authorized by the Texas Railroad Commission. The insurance company admitted that William Henry Matthis had been a passenger on the bus, was injured in the accident, and died from his injuries sustained therein, but denied that there was any negligence on the part of the driver of said bus, and denied any liability to the plaintiffs. No appearance was made on behalf of the other defendant, Texas and Louisiana Coaches, Inc.
On May 20, 1943, plaintiffs filed an amended and supplemental petition in which they name D.W. Weeks, doing business under the name of Texas Louisiana Coaches, as defendant, and alleging that the Ford bus involved in the accident was being operated by said defendant and that the defendant Highway Insurance Underwriters carried insurance thereon.
On September 24, 1943, plaintiffs filed a second amended and supplemental petition naming F.S. Whittlesey, owner of the Ford bus, as a party defendant.
On October 1, 1943, Whittlesey appeared for the purpose of urging an exception of jurisdiction ratione personae. On January 27, 1944, on plaintiffs' motion, judgment of non-suit against Whittlesey was granted.
On January 24, 1944, the Highway Insurance Underwriters filed an answer to plaintiffs' amended and supplemental petition, adopting therein the allegations of its answer to the original petition, and praying that in the event of judgment against it that said judgment be limited to $5,000, the maximum liability under its insurance policy.
The case proceeded to trial before a jury as against the Highway Insurance Underwriters only. There was a verdict and judgment in favor of the plaintiffs and against the said defendant in the sum of $5,000, and the defendant has appealed.
The only question involved in the case is whether or not there was negligence on the part of the bus driver which was a proximate cause of the accident. Plaintiffs' *Page 347 
case is founded on the allegation that the accident was caused by the negligence of the bus driver in driving his bus at an excessive rate of speed in heavy traffic and on a very dusty road. Defendants contend that the bus driver was following the traffic rules and that there was no negligence on his part in passing jeeps which were traveling at from 12 to 15 miles per hour and that the accident was caused solely by the driver of the half track tank in stopping the half track tank suddenly and without any signal whatsoever.
As held by us in the case of Grant v. Baton Rouge Bus Company,15 So.2d 123: Under contract which arises out of relationship between passenger and motor common carrier, carrier owes passenger duty to safely transport him over its route from place where passenger boards conveyance to place of his destination and there safely to discharge him, and carrier is liable for slightest neglect or lack of care resulting in injury to passenger. And in that case we also held in effect that where a passenger is injured it is incumbent on the motor carrier to show by preponderance of evidence lack of negligence on its part.
In the case before us there is some conflict in the evidence, but there are certain important facts that stand out clearly. The rate of speed at which the bus was traveling is in dispute. Some witnesses testify that between De Ridder and Sugartown the driver was maintaining a speed of about 60 miles per hour, whereas he testifies that he was traveling at 40 miles per hour, and that after entering the convoy some witnesses, including Mr. Carraway, who met the bus just before the accident, testify that the bus was running at about 60 miles per hour, whereas the driver maintains, and is supported by other witnesses, that he was traveling about 20 to 25 miles per hour. There seems to be no question, however, that the road was very dusty and that the traffic was heavy and visibility was very poor, and it is also clearly shown that the bus crashed into the half track tank with great force, since the radiator and front end of the bus were crushed in about two feet and the decedent was thrown with such great impact as to knock out his front teeth, and to render him unconscious, and finally causing his death. These physical facts show that the driver of the bus was traveling at an excessive rate of speed considering the traffic conditions and lack of visibility caused by the heavy dust. According to the bus driver, he was 15 or 20 yards, 45 to 60 feet, in the rear of the tank when he noticed that the tank was stopping. This was a sufficient distance, in our opinion, to be able to stop his bus if he had been traveling at a rate of speed under the then prevailing dusty and traffic conditions, keeping a proper lookout and having his bus under proper control to stop immediately if necessary. The only excuse offered by the bus driver for the accident is that the half track tank driver stopped suddenly and without giving a signal, but the preponderance of the evidence is to the effect that the dust was so heavy that the half track tank could not be seen after crossing the Sugar Creek bridge and whether or not the tank driver gave the signal before stopping is a matter of conjecture, and it seems clear from the evidence, including the bus driver's testimony, that he proceeded blindly in this heavy dust and did not have his bus under control as to be able to stop within the range of his limited vision. It is apparent that he was taking chances which made him guilty of negligence, and that this negligence was a proximate cause of the accident, regardless of any negligence on the part of the half track tank driver.
For these reasons, the judgment appealed from is affirmed.