86 So.2d 590 (1956)
Rosalle A. COLEMAN et vir, Plaintiffs-Appellants,
v.
SHREVEPORT RAILWAYS COMPANY, Defendant-Appellant, and
J. A. Frantom, Defendant-Appellee.
No. 8492.
Court of Appeal of Louisiana, Second Circuit.
March 23, 1956.
*591 Cook, Clark, Egan, Yancey & King, Shreveport, for plaintiffs-appellants.
Booth, Lockard, Jack & Pleasant, Shreveport, for defendant-appellant.
Browne, Browne & Bodenheimer, Shreveport, for defendant-appellee.
AYRES, Judge.
Rosalie A. Coleman and her husband, Elgie Coleman, instituted this action for damages as the result of an accident occurring October 21, 1952, near the intersection of Marshall and Fifth Streets in the City of Shreveport. The defendants are Shreveport Railways Company and J. A. Frantom.
Plaintiff, Rosalie A. Coleman, boarded a trolley as a fare-paying passenger at approximately 7:15 P.M. and was proceeding in a southerly direction on Marshall Street to her residence. A short distance south of the aforesaid intersection the trolley collided with the rear end of an driven by Frantom. Rosalie A. Coleman, seated on the back seat of the trolley, was thrown forward by the stoppage of the trolley resulting from the sudden application of brakes and not necessarily from the collision, which was very slight. The result was that plaintiff Rosalie A. Coleman's head was struck a severe blow across the right ear on an iron post and thereafter her right hip struck the floor of the trolley. She seeks to recover the sum of $5,000 for pain, suffering and disability; her husband seeks to recover the sum of $1,185 representing the loss of wages of his wife and medical and hospital expenses incurred.
There was judgment in the trial court in favor of plaintiff, Rosalie A. Coleman, against the defendant, Shreveport Railways Company, for $1,250 and in favor of plaintiff Elgie Coleman against the same defendant for $693. Plaintiffs' demands against J. A. Frantom were rejected. From the judgment thus rendered and signed, the Shreveport Railways Company has appealed suspensively, which appeal plaintiffs have answered, praying that the awards in their favor be increased to the amount originally sought.
*592 Plaintiffs perfected a devolutive appeal from that portion of the judgment rejecting their demands against Frantom.
After pleading the doctrine of res ipsa loquitur, plaintiffs charged the driver of the trolley with negligence proximately causing the accident in failing to maintain a proper lookout, or to keep the trolley under control, or to proceed at a safe distance behind the preceding car and in suddenly and sharply applying the brakes and crashing into the rear of the vehicle driven by Frantom. Negligence was also charged to Frantom in the bringing of his vehicle to a sudden stop on Marshall Street in the lane of traffic proceeding in a southerly direction, and in failing to give any signal of his intention to stop, by hand signal or otherwise, or to keep his vehicle under complete and proper control or to keep a proper lookout.
Defendant Shreveport Railways Company contends, however, that if actionable negligence were present in this case, it was the negligence of Frantom, particularly in suddenly bringing his car to a stop in the line of traffic when he knew that a vehicle was following in close proximity. Frantom reiterated plaintiffs' charges of negligence against the driver of the trolley and further charged him with failure to drive into the innermost traffic lane to the left to avoid striking his car.
The trial court came to the conclusion that it was unnecessary to determine whether or not Frantom was negligent in bringing his car to a sudden stop to avoid striking a collie dog which ran out into Marshall Street a short distance ahead of the Frantom car, in view of the finding that the proximate cause of the accident was the negligence of the trolley driver in failing to keep his trolley under complete control and in failing to keep a proper lookout.
Both defendants filed exceptions of no cause or right of action, which were overruled. These exceptions have not been urged before us and, therefore, may be considered as abandoned. In passing, however, it may be stated that we find no merit in either exception.
The original answer of the defendant, Shreveport Railways Company, denied generally plaintiffs' allegations and alleged that the accident was due to the negligence of Frantom. In an amendment this defendant alleged that the trolley stopped at the aforesaid intersection immediately to the rear of the Frantom automobile awaiting a change in the signal lights from "red" to "green", upon which occurring both vehicles proceeded forward, and that upon the Frantom vehicle coming to a sudden stop, the trolley driver was faced with a sudden emergency requiring application of the emergency brakes and the sudden stopping of the trolley. By a second supplemental answer it was alleged that the trolley had not stopped but was approaching the intersection when the light changed to "green" and that the driver was never closer than 35 or 40 feet from the rear of the Frantom car. In this connection, B. L. Hinsley, the trolley driver, testified that as the Frantom car proceeded he accelerated the speed of the trolley and was traveling about 20 miles per hour when he saw the Frantom car stopping after the emergency brakes were applied. The collision between the trolley and the car was very slight.
Hinsley's explanation of the cause of the accident, taking into account the reaction time after seeing the flash of the rear lights on the Frantom car, due to Frantom's application of the emergency brakes, was that it was impossible for him to avoid the collision. There was no other traffic in the vicinity on Marshall Street, a four-lane street. No explanation was made why Hinsley could not have driven the trolley to the left of the Frantom car and thereby have avoided the accident, other than, of course, his contention he had no time or opportunity to do so after the discovery of the sudden stopping of the Frantom car in front of the trolley.
Frantom alleged that in proceeding in a southerly direction on Marshall Street he stopped for a "red" light at the intersection *593 with Fifth Street; that after the change of signals he continued forward a distance of approximately 50 feet when he saw running in front of him a large collie dog and, in an effort to avoid hitting the dog, he applied his brakes and his car was struck from the rear by the trolley. In a statement taken shortly after the accident Frantom stated that he saw the large collie dog running at about 20 feet in front of his car, causing him to apply his brakes. On the trial, however, he testified that, after continuing forward at the intersection a distance of about 50 feet, he saw an object coming out from behind a parked car, which he did not discover was a dog until the accident had happened. Although he knew the trolley was following his car, he admitted stopping in the south-bound lane of traffic of the trolley on Marshall Street, without giving a hand signal of his intention to stop.
Frantom's explanation that he did not know whether the object darting into the street in front of his car was a child, dog or other object, appears reasonable under the circumstance that it was dusk-dark at the time. His immediate reaction was the normal and usual reaction of an ordinary, prudent person confronted with an emergency such as this. He immediately applied his brakes and brought his car to a stop. When he hit his brakes his rear lights flashed a signal of that fact, indicating a sudden stop. There was no time or opportunity for the giving of the conventional hand signal of an intention to stop before applying the brakes. That time-consuming maneuver would have likely obviated the necessity of either applying the brakes or stopping before striking the object suddenly appearing in the street.
On consideration of the question of liability, it would appear that the distance between the two vehicles and their speed at the time the dog ran out in front of the said car and when Frantom, the driver of the forward car, applied his brakes and when Hinsley, the driver of the trolley, likewise applied his brakes, are matters of material importance. The testimony of the various witnesses on these points is at best only estimates, which must be weighed in the light of the conditions and the suddenness of the accident, as well as the lapse of time from the accident to the date of trial. In thus giving consideration to the testimony on these features of the case, the defendant, Shreveport Railways Company, submits that it becomes completely clear that the trial judge was in error in concluding that after Frantom's stop-light signal flashed, the trolley traveled 75 to 85 feet before coming in contact with the Frantom car. Fifth Street is 35 to 40 feet wide. Frantom stopped his car outside of the intersection and, after proceeding, he traveled slightly beyond the intersection when the object appeared suddenly from beyond cars parked on the right of Marshall Street and beyond the intersection. Hinsley testified that the trolley was operated from 15 to 20 miles per hour, and, on seeing that the light was "red", he applied his brakes, preparatory to stopping, reducing the speed, but the signal changed before the stop was completed, whereupon he accelerated his speed; that when the Frantom car began moving forward, the trolley was 40 or 50 feet away, and that after he saw the "red" signal light flash on the rear of the Frantom car, the car traveled 35 feet before it came to a stop. The mathematical calculation of the distance traveled by the trolley after the lights were flashed, between 75 and 85 feet, was admitted by Hinsley. Frantom testified that the dog came from among parked automobiles and appeared suddenly in front of his car, about 10 feet away, when he was traveling at approximately 15 miles per hour in second gear. Ernest Crain, Jr., who was accompanying Frantom at the time, testified that they traveled a couple of car lengths beyond the intersection when Frantom applied his brakes and slowed down on account of the object appearing suddenly in the street. Hinsley says the trolley was never closer than 35 to 40 feet from the Frantom car as the trolley was coming to a stop, the speed of which was reduced to 10 miles per hour, and that in proceeding forward the distance between the vehicles, if it diminished at all, was very little.
*594 The record, therefore, supports the conclusion of the trial judge that the trolley proceeded a distance of from 75 to 85 feet after the stop lights flashed on the forward car and that, accordingly, Hinsley had that distance within which to stop the trolley or within which to maneuver the trolley to the left innermost traffic lane proceeding in a southerly direction.
There is no question as to the law involved in the instant case so far as concerns the obligation of the defendant, Shreveport Railways Company, to its passengers. Amer.Jur., Vol. 10, p. 163, "Carriers", Sec. 1245, states the general rule as to the degree of care required of a carrier towards its passengers. It states:
"The degree of care required of a common carrier is not capable of a precise formulation, applicable to all situations that may arise. In general, however, carriers of passengers are required to exercise the highest degree of care, vigilance, and precaution for the safety of those it undertakes to transport, and are liable for the slightest negligence."
This rule has been consistently followed in this State.
Mire v. Lafourche Parish School Board, La.App., 62 So.2d 541; Chisholm v. Ryder, La.App., 56 So.2d 316; Hopper v. Shreveport Rys. Co., La. App., 51 So.2d 845; Brown v. Homer-Doyline Bus Lines, La.App., 23 So.2d 348; Oppenheim v. Toye Bros. Yellow Cab Co., La.App., 7 So.2d 420; Hughes v. Baton Rouge Electric Co., La.App., 188 So. 473; Wallace v. Shreveport Rys. Co., La.App., 175 So. 86.
See, also, 13 C.J.S., Carriers, § 678, pp. 1257-1258.
This rule was recognized and followed in this State as early as 1875 in the case of Julien v. Captain and Owners of Steamer Wade Hampton, 27 La.Ann. 377, wherein Justice Taliaferro of the Supreme Court, in quoting from Angell on Common Carriers, stated:
"`Common carriers are bound to carry their passengers safely and securely, and to use the utmost care and skill in the performance of their duties.' * * * `And, of course, they are responsible for any, even the slightest, neglect.' * * * `The burden of proof is on the defendants to establish that there has been no disregard whatever of their duties, and that the damage has resulted from a cause which human care and foresight could not prevent.'"
That holding was cited as authority by this court in Wallace v. Shreveport Rys. Co., supra [175 So. 88], and, after listing numerous decisions wherein the general rule, as stated, has been adhered to, it was stated:
"Therefore, in view of the rule so definitely announced in these decisions, a defendant is required to prove, by a preponderance of evidence, freedom from negligence as a cause of the breach of the contract of carriage, when once the plaintiff has made out a prima facie case of negligence; and, in this respect, such a defendant is in practically the same position, after this prima facie showing has been made, as a plaintiff occupies in an ordinary tort action. He must exonerate himself from negligence and overcome the presumption against him by a preponderance of the testimony."
It was held in Brown v. Homer-Doyline Bus Lines, supra, and quoted with approval in Hopper v. Shreveport Rys. Co., supra [51 So.2d 847]:
"`Under this rule of `highest degree of care' the commission of any act of negligence which contributes to accidental injury to a passenger, or the omission of any act of prudence, care or caution which might have resulted in avoiding the infliction of injury upon a passenger, subjects the carrier to liability in damages.'"
The jurisprudence is well settled, too, on the proposition that when a farepaying *595 passenger proves his status as such and that he was injured by accident in or on the vehicle in use, he makes out a strong prima facie case and should recover, unless the carrier adduces evidence of a character of sufficient weight to clearly overcome such prima facie case. It was so held in the Wallace case and in Chisholm v. Ryder, both supra. Therefore, plaintiffs, having established that plaintiff Rosalie A. Coleman was a fare-paying passenger on one of defendant's common carrier trolleys, the burden is upon such defendant to exonerate itself from the imputation of actionable negligence. Hopper v. Shreveport Rys. Co., supra.
Our consideration of the evidence as contained in this record leads us to the conclusion that the defendant, Shreveport Rys. Co., not only has failed to discharge its burden of exonerating itself from actionable negligence but that the record affirmatively establishes acts of negligence on the part of the trolley driver which were sufficient to and did, in fact, constitute a proximate cause of the accident. We agree with the trial judge, who found from the evidence, as we have attempted to point out hereinabove, that the driver of the trolley proceeded from 75 to 85 feet after the brakes were applied on the forward car and after the trolley driver saw the rear signal lights flash from Frantom's application of his brakes. At the rate of speed at which both vehicles were operated, the conclusion is inescapable that the trolley could, in all probability, have been stopped by the use of ordinary and prudent care without coming to such a sudden halt as to throw and jerk its passengers in a manner as to do injury to them. Time and opportunity were ample for the driver to veer the trolley to the left and into a lane of traffic to the left of the Frantom car, and to avoid the accident.
In the Hopper case, supra, the facts were that plaintiff boarded, in the down town section of the City of Shreveport, one of defendant's trolley buses, operating on what is known as the Cedar Grove line, paying her fare as she entered and seating herself in the first seat on the left-hand side facing the front of the bus. As the bus proceeded south on Southern Avenue and approached the driveway entrance of a bottling company situated on the west side of the street, the bus driver noted the presence of a pick-up truck which had come to a stop at or near the center of the street on the east side thereof, evidently preparatory to turning left into the driveway of the bottling company's premises, the driver evidently awaiting the passage of the bus before completing his turn. While so stopped and as the bus was approaching, another vehicle proceeding northward on Southern Avenue crashed into the rear end of the halted truck with such force as to throw the front wheels of the truck slightly across the approximate center of the street. Whereupon, perceiving the occurrence of the accident, the bus driver swerved his vehicle sharply to the right and suddenly and sharply applied his brakes, throwing plaintiff therein to the floor of the bus and inflicting the injuries for which she sought damages. There was no traffic congestion in the vicinity and there was ample room, by maneuvering the bus slightly to the right, for the driver to have taken that course and avoided the possibility of a collision with the truck in the center of the street. The accident resulted from the driver's urgent application of the brakes by reason of which he brought the bus to a sudden and abrupt stop. The conclusion of this court was that the accident could in all probability have been avoided had the bus driver swerved or veered to the right, which would have obviated any necessity for the sudden and abrupt application of the trolley brakes.
Of equal certainty was Hinsley's opportunity to have veered the course of the bus to the left and avoided striking the car or the necessity of suddenly applying the brakes or stopping. Hinsley's failure to thus use ordinary and prudent care places upon his employer the duty and obligation of repairing the damage done.
We are not impressed with the record as showing that Frantom was guilty of *596 actionable negligence in slowing down and stopping his car some distance ahead of the trolley in order to prevent the striking of an object suddenly appearing in the highway ahead of him, the nature of which he could not ascertain by the suddenness of its appearance and in the darkness of the night. The traffic regulations, as contained in LSA-R.S. 32:234, provide that
"The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicle and the traffic upon and condition of the highway."
This rule is applicable to a street in a city. Under Sec. 1 of said title, Par. (8), "`Highway'", so it states, "includes every way or place of whatever nature open to the use of the public for the purpose of vehicular travel".
In McDaniel v. Capitol Transport Co., Inc., La.App., 35 So.2d 38, 39, it appears that McDaniel was driving south on U. S. Highway 51 at night, with a car approaching him, and as the cars approached one another, McDaniel saw some objects in the highway between the lights of his own and that of the approaching car, whereupon he reduced his speed when he discovered some cows were crossing the highway. The defendant's truck was following McDaniel, and when McDaniel slowed the speed of his automobile, the vehicle of defendant struck the rear of the McDaniel automobile. McDaniel was allowed to recover damages. The court quoted from Hill v. Knight, La.App., 163 So. 727, 728, wherein the following rule of law found in Blashfield's Cyclopedia of Automobile Law, Vol. 1, p. 942, was cited with approval:
"`The driver of a car following a few feet behind another, under circumstances such that he should anticipate the possibility of obstruction or trouble of some sort, should have his car under such control or proceed at such rate of speed that he could stop at once if the car in front stops.'"
To the same effect is the holding in Max Barnett Furniture Co., Inc., v. Barrosse, La.App., 70 So.2d 886, 887, wherein the court cited with approval Crow v. Alesi, La.App., 55 So.2d 16, where it was stated:
"`A motorist following other traffic must keep his automobile at a safe distance behind so as to enable him to stop his automobile in a sudden emergency.'"
See, also, Overstreet v. Ober, 14 La.App. 633, 130 So. 648; Chisholm v. Ryder, supra.
While the courts have recognized differences in traffic upon country highways from that upon crowded city streets, the absence of other traffic on the street in the vicinity and at the time of this accident renders unimportant here any such distinction.
In the Barrosse case, an accident occurred between two Buicks on Poydras Street in the City of New Orleans. The defendant's car was followed by that of one LeBlanc, whose claim for damages was assigned to plaintiff, Max Barnett Furniture Co., Inc. A strong wind was blowing and a hard rain was falling and the surface of the street was wet and slippery. The hood of the Buick car was blown from its position on the automobile, whereupon Barrosse applied his brakes in emergency and brought his car to a sudden stop. Before LeBlanc could bring his car to a stop, it crashed into the rear of the Barrosse car and sustained the damage for which the suit was brought. It was there held that the proximate cause of the accident was not the blowing off of the hood by the wind but was the fault of the driver of the following car in operating his automobile too close behind the preceding car at a speed which did not permit him to bring his car to a stop in time to avoid contact with the preceding automobile.
We, therefore, conclude that the record fails to establish that Frantom was guilty of any actionable negligence constituting the proximate cause of the accident herein involved, but that, for the reasons *597 hereinabove stated, the proximate cause was the negligence aforesaid of Hinsley, the driver of the trolley.
There remains for consideration the question of quantum. The award is attacked as excessive by defendant and contended as inadequate by plaintiffs. That plaintiff Rosalie A. Coleman sustained serious and painful injuries is hardly questionable. Plaintiff was seated in the middle of a seat extending across the width of and at the rear of the bus. When the brakes were suddenly applied she grabbed an iron post in front of her seat and, by the force of momentum and the sudden and abrupt stopping of the bus, she was thrown forward and swung around the post, striking her head about the right temple against the post, whereupon she fell, her hip striking the floor. Plaintiff was hospitalized in the Highland Sanitarium for two days and nights and was then permitted to return to her home. Dr. W. F. Drummond diagnosed her condition, as recorded in the hospital records, as a contusion of the right side of head and right thigh, and Meniere's syndrome, probably traumatic. There were visible bruises on the right side of her face across her right ear, with tenderness over the right mastoid. Her hip showed evidence of a bruise; she suffered headaches, vertigo, nausea and vomiting while in the hospital. Beginning October 25, 1952, plaintiff was treated by her family physician, Dr. G. H. Cassity, who found her suffering with a lumbosacral sprain, rigid muscle spasms of the lumbar muscles, bruises on her thigh and hip, disturbance of equilibrium by a concussion of the brain, headaches, nausea, vomiting and dizziness, and contusions of the right side of her head. It was the doctor's opinion that her injuries were sufficient to and did disable plaintiff from returning to her work until May 1, 1953. The testimony of Dr. Heinz K. Faludi, testifying for the defendant, in effect, corroborated the testimony of Dr. Cassity.
Taking the testimony as a whole as to plaintiff's injuries, it appears to us that the trial judge gave proper weight and consideration, not only to the pain and suffering, disability and the extent and duration probably due thereto, but also to her husband's claim for her loss of salary and medical expenses incurred. The award appears to be neither excessive nor inadequate.
For the reasons herein assigned, the judgment appealed is affirmed at appellant's costs.
Affirmed.