107 So.2d 69 (1958)
Mrs. Audrey M. COLEMAN, Plaintiff-Appellee,
v.
CONTINENTAL SOUTHERN LINES, Inc., et al., Defendants-Appellants.
No. 8921.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1958.
Rehearing Denied November 25, 1958.
Writ of Certiorari Denied January 12, 1959.
*70 Stafford & Pitts, Alexandria, Jackson, Smith, Mayer & Kennedy, Shreveport, for appellants.
John P. Godfrey, Many, for appellee.
GLADNEY, Judge.
This action in tort was brought by a passenger who was injured while traveling upon a public conveyance. Mrs. Audrey Coleman, on Saturday, August 9, 1952, purchased a ticket at Springhill, Louisiana, and boarded a bus of Continental Lines, Inc., a common carrier, for the purpose of making a trip to Shreveport, Louisiana. While en route between Haughton and Bossier City, the bus was involved in a collision with an automobile driven by Henry Mack Adams, which caused personal injuries to Mrs. Coleman. Mrs. Coleman instituted this action on October 14, 1952, for recovery of damages from the defendant bus company. After trial, judgment was entered on June 30, 1958, awarding to plaintiff $6,077.04. The defendant has appealed and plaintiff has answered the appeal praying for an increase in the award.
After the bus in which Mrs. Coleman was riding left Haughton, headed in the direction of Shreveport, it proceeded along a blacktopped road which intersects Highway No. 80. Before reaching the highway, the eighteen foot blacktopped road, bordered on each side with dirt shoulders about four feet wide, runs northward toward a long sloping hill, crosses a narrow bridge, forty-five feet long and eighteen feet wide, and then turns east and continues about three hundred yards at about a forty-five degree arc, before entering Highway No. 80. The collision between the two vehicles occurred after the bus had crossed the bridge at a point approximately thirty-five feet from the bridge. After the contact between the two vehicles, the bus continued straight, went off the road, crossed a shallow ditch, and came to rest in a field at a point about one *71 hundred fifty feet distant from the point of impact. Several passengers on the bus were injured.
The petition, as filed by plaintiff, charges that the bus traveled at a speed of about seventy miles per hour when it went down the hill and approached the bridge on a straight stretch of the highway, crossed the narrow bridge without stopping or slowing down, then ran into the car driven by Adams, approaching from the other direction, which was completely stopped on its side of the highway. Specifically, it is charged the driver of the bus was negligent in traveling at such an excessive rate of speed, in failing to keep the bus under control, in failing to maintain a proper lookout, and in driving on the wrong side of the road and colliding with an automobile after the latter had come to a stop on its proper side. Further implications of fault are alleged, in that the bus driver was driving in a careless and reckless manner with disregard of the rights and safety of the passengers' lives. It is also argued by appellee's attorney that Jewell B. Hughes, the driver of the bus, was an inexperienced operator and did not exercise prudence and good judgment in the operation of the bus. These charges are denied by appellant who insists that its driver was in no wise guilty of negligence.
The courts have imposed upon common carriers a duty to convincingly demonstrate that injuries to their passengers were not caused by negligence on the part of their servants. The burden of proof requires the carrier to exonerate himself from any act of omission or commission that can be said to be negligence and a contributing cause to the damage or injuries sustained. The ruling is to be found in judicial pronouncements which differ mainly in their mode of expression. Proof that a person was a fare paying passenger in a passenger carrier and that he was injured on the carrier makes out a prima facie case, which the carrier must overcome by evidence. Wallace v. Shreveport Railways Company, La.App.1937, 175 So. 86; Grant v. Baton Rouge Bus Company, Inc., La.App.1943, 15 So.2d 123; Hopper v. Shreveport Railways Company, La.App.1951, 51 So.2d 845; Chisholm v. Ryder, La.App.1952, 56 So.2d 316; Coleman v. Shreveport Railways Company, La. App.1956, 86 So.2d 590.
Public carriers are held to the exercise of the highest degree of care, and when an accident occurs which results in injury to a passenger, the burden of proof is upon the carrier to show freedom from fault. Johnson v. City of Monroe, La.App. 1935, 164 So. 456; Hughes v. Baton Rouge Electric Company, La.App.1939, 188 So. 473; Oppenheim v. Toye Bros. Yellow Cab Company, La.App.1942, 7 So.2d 420; Grant v. Baton Rouge Bus Company, Inc., La.App.1943, 15 So.2d 123; Brown v. Homer-Doyline Bus Lines, La.App.1945, 23 So.2d 348; Jakubec v. Southern Bus Lines, La.App.1947, 31 So.2d 282; Hopper v. Shreveport Railways Company, La.App. 1951, 51 So.2d 845; Chisholm v. Ryder, La.App.1952, 56 So.2d 316; Mire Lafourche Parish School Board, La.App.1952, 62 So.2d 541; Wooten v. Thompson, La. App.1954, 69 So.2d 557; Brown v. Gonzales, La.App.1955, 77 So.2d 887; Mansfield v. Toye Bros. Yellow Cab Company, La.App.1955, 78 So.2d 544; Coleman v. Shreveport Railways Company, La.App. 1956, 86 So.2d 590.
Under the rule of "highest degree of care" the commission of any act of negligence which contributes to accidental injury to a passenger, or the omission of any act of prudence, care or caution which might have resulted in avoiding the infliction of injury upon a passenger subjects the carrier to liability in damages. Brown v. Homer-Doyline Bus Lines, La.App.1945, 23 So.2d 348; Hopper v. Shreveport Railways Company, La.App.1951, 51 So.2d 845. In Rauscholb v. Continental Southern Lines, Inc., 1955, 81 So.2d 87, 89, this court stated:

*72 "There is no contention as to the law applicable to such a situation. While a carrier of passengers is not an insurer, it is required to exercise the highest degree of care, vigilance and precaution for the safety of those it undertakes to transport and is liable for the slightest negligence. 10 Am. Jur., p. 163, `Carriers', § 1245; 13 C.J.S. Carriers, § 676 et seq., p. 1253. In many cases the fact of the occurrence of an accident and the sustaining of an injury to a passenger gives rise to the presumption that the carrier was negligent inasmuch as under ordinary conditions, with proper direction and control, motor buses do not collide with other vehicles. Oppenheim v. Toye Bros. Yellow Cab Company, La.App., 7 So.2d 420; Hamburger v. Katz, 10 La.App. 215, 120 So. 391; Dawson v. Toye Bros. Yellow Cab Co., Inc., 15 La.App. 326, 131 So. 716."
In Gonzales v. Toye Bros. Yellow Cab Company, La.App.1940, 198 So. 379, 381, Judge Janvier observed:
"It is also well established in our jurisprudence that, where a passenger is injured in an accident the cause of which the passenger can know nothing about, the burden is on the carrier to prove itself free from fault, and, where the cause is claimed to be a sudden emergency created entirely by some third person, the carrier is under the necessity, if it would absolve itself from liability, of showing that neither it nor any of its employees was in any way involved in the creation of the emergency and also that the operators of the vehicle in which the passenger was riding did all that they could (even though it was not the best thing) to prevent the accident."
With the foregoing rules in mind, we turn to consideration of the issues raised pertaining to negligence or want of negligence on the part of Hughes, the driver of the bus. The record contains the testimony of many witnesses, relating to facts bearing upon the question of negligence. In arriving at the actual facts upon which to base our judgment herein necessarily we have given more weight to the testimony of some witnesses than to that of others. The number of witnesses is not a decisive factor in arriving at true facts and the weight to be given the testimony of any particular witness must be determined in the light of the opportunity of the witness for observation, his or her credibility, knowledge and experience, and the probability of his or her testimony when taken together with other circumstances which are to be considered. Miller v. W. Horace Williams Company, La. App.1942, 8 So.2d 734; Franklin v. Greyhound Corporation, La.App.1953, 64 So.2d 492.
As heretofore pointed out plaintiff alleged the bus while traveling at a high rate of speed crossed the narrow bridge without slowing down and ran into the completely stopped Adams car on the far side of the bridge entirely on its own side of the highway. Defendant denies the accident occurred in the manner so alleged and asserts the bus was traveling at a reasonable rate of speed when its driver saw the Adams car approaching from the opposite direction and Adams attempted some maneuver for the purpose of slowing his speed or stopping, but that because of the effect of the car's brakes or of Adams' driving, the car veered from one side of the road to the other and came into contact with the bus which was on its side of the road, and, in fact, with its right wheels on the shoulders of the road. Also the position is taken that the bus driver saw the Adams car and upon realizing the danger, steered the bus to the right and did everything possible to avoid striking the Adams car, which had suddenly pulled over into the bus' travel lane. The two points of view as reflected in the pleadings are most conflicting. We also find the *73 testimony of some of the witnesses at variance, which is to be expected.
In the briefs filed herein both sides have discussed the ability and skill of Jewell B. Hughes, as the driver of the passenger bus. The question was raised by appellee who has pointed out the short time Hughes had been an employee-operator at the time of the accident following his period of training for the job. The gist of this assertion is to imply Hughes was incapable of mature judgment and acted in an injudicious manner when confronted with the emergency which arose immediately prior to the accident. In order to prove this contention untrue appellants have gone to considerable pains to establish through evidence the investigation of Hughes prior to employment, his careful and thorough training, and the driving experience of Hughes. The record conclusively shows Hughes was carefully selected from a number of applicants for the position as bus driver, a job which he had held with defendant company only a short while. Our conclusion is that Hughes was qualified and competent. The record reveals after an investigation of the accident Hughes was fully exonerated from any blame by officials of the company and by James E. Lattier, an experienced driver and employee of defendant, who accompanied Hughes on this particular run. Hughes, aged 38 years, was an experienced driver of heavy vehicles for many years prior to his application with the defendant. The testimony of Billy R. Haynes, Saville McPherson, Murphy Brown and Allie Tucker, all passengers on the bus, uniformly accredited Hughes with an exhibition of careful and cautious driving. General charges of reckless driving and disregard of the rights and safety of the passengers' lives are, we think, clearly unwarranted by the evidence.
Although the burden of proof rests heavily upon the defendant to exonerate itself from any act of negligence which contributed to the accident, we find from a careful examination of the record the issues which must be considered are: (1) Whether or not Hughes was properly observant of traffic conditions and kept his motor vehicle under control; (2) Whether or not the bus was traveling at an unreasonable rate of speed under circumstances which could have contributed to the occurrence of the accident; and (3) Whether or not the bus was being driven on the wrong side of the road at the time the collision occurred.
As to some of the factual issues, the testimony of the several eyewitnesses reflects differences on some points and agreement on others. However, there is no substantial evidence to support the charge Hughes was not properly observant or that he failed to maintain proper control over his bus prior to and at the time of the accident. The uncontradicted testimony is the bus remained under the control of Hughes until it came to rest in the field about one hundred fifty feet from the point of impact with the Adams car. Hughes' explanation for not remaining on the road and not stopping in a shorter distance after the impact, as hereinafter related, is reasonable and must be accepted.
Turning now to a consideration of the question of excessive speed by the operator of the bus, we are mindful that in order to discharge its burden of proof in this respect it is incumbent upon the defendant to show its operator was driving at a reasonable and proper speed under the circumstances and at such a speed as not to endanger persons or property. This rule is derived from a statutory traffic regulation, LSA-R.S. 32:227. What constitutes a reasonable rate of speed must be determined after consideration of all pertinent factors which have any bearing upon the fault of the driver or drivers involved, as well as the testimony of witnesses.
There were eight eyewitnesses who testified at the trial of this case as to the speed of the bus at the time it approached the bridge, and again as to its speed as it *74 crossed the bridge. Of these, only plaintiff and Henry Mack Adams testified the speed of the bus was from sixty to seventy miles per hour as charged in plaintiff's petition. The remaining six witnesses testified the speed at which the bus was traveling was not at any time excessive. Four of these were passengers on the bus and their testimony somewhat differs from the testimony of Hughes, the driver of the bus, and James Lattier.
Hughes and Lattier were responsible for the safety of the passengers. Both were seated in the front of the bus with an unobstructed view. Surely they were in a better position than anyone else to know and to express an opinion as to the actual speed of the bus at a given time. Mrs. Coleman's testimony indicates she was not too attentive to the manner in which the bus was traveling and her opinion as to its speed is of no probative value. Henry Mack Adams was meeting the bus, and the testimony of a number of witnesses was to the effect he was having trouble keeping his vehicle in its proper lane of travel. We believe he was in no position to give a worthwhile opinion as to the speed of the bus.
Of some materiality is the testimony of Hughes, not disputed, to the effect the bus was equipped with a governor which prevented it from exceeding a speed of fifty-five miles per hour. Passengers Saville McPherson and Allie Tucker testified the bus approached the bridge and crossed it at a speed which they estimated was from forty to forty-five miles per hour. Murphy Brown, another passenger on the bus, although stating the speed of the bus was not excessive, declined to estimate its speed. The testimony of Billy R. Haynes corroborated that of Hughes and Lattier that as the bus approached and crossed the bridge it had slackened its speed to about twenty to twenty-five miles per hour, or, as Lattier put it, not more than thirty-five miles per hour. This is consistent with the testimony of Hughes, Lattier and Billy Haynes. The record discloses no reason to reject the testimony of Hughes and Lattier, who were in a better position to know the speed of the bus than any others who testified on this point.
But, arguendo, conceding the speed of the bus was moderate and perhaps not over thirty-five miles per hour as it approached and crossed the bridge, nonetheless circumstances could have intervened which would have made such speed unreasonable and excessive. Thus, it is pointed out by counsel for the appellants that Hughes, according to his own testimony, when thirty-five feet from the bridge observed Henry Mack Adams approaching at a speed of forty-five miles per hour, about one hundred fifty feet from the far side of the bridge, and that as Adams approached, he seemed to apply his brakes in such a manner as to cause his automobile to swerve from one side of the road to the other, and faced with these conditions, Hughes was negligent therefore, in not reducing the speed of his vehicle or bringing it to a stop. It is also argued Hughes should not have attempted to cross the bridge ahead of Adams. We think the argument is not sound. If we accept Hughes' testimony we must accept it in its entirety, and if we do this with consideration of the distance of each from the bridge we think Hughes had a right to enter and did, in fact, preempt the bridge ahead of Adams. When Hughes first observed Adams there was no reason for either driver to believe danger of collision was developing, for Adams was at the time Hughes observed him, a distance of two hundred thirty feet (thirty-five plus forty-five plus one hundred fifty feet) from the bus. It was not until the bus was on the bridge that Hughes first saw the potential danger signaled by Adams' car zigzagging across the highway. Hughes then, according to his testimony, resolved it would be unwise to permit a collision upon the bridge with probability of the bus overturning as the bridge was without adequate protective railings, and he thought the accident might be averted by turning far to *75 the right of the road. We say with conviction Hughes should not have acted differently under the circumstances. His judgment was sound.
Our conclusion on the question of speed, appraised in the light of the opportunity of those in the best position to know the circumstances, is that the bus was not traveling at an excessive rate of speed at the time of the accident.
The remaining question presented for our consideration is the position of the bus with reference to its lane of travel just prior to and at the time of the accident. The weight of the testimony and evidence is again found to be with defendants. What course did the bus take as it was meeting Adams' car? Adams testified he had reduced the speed of his car to about five miles per hour upon reaching a point fifty feet from the bridge, at which time the bus came over the bridge traveling at an excessive rate of speed in the center of the road and the collision occurred as he was practically stopped on his side of the highway. Hughes, Lattier and other eyewitnesses gave testimony flatly contradicting Adams' version of how the collision occurred. Hughes and Lattier stated that as the bus was crossing the bridge, the Adams car was approaching with its left wheels three or four feet left of the center of the highway, and confronted with this situation, Hughes drove the bus far to the right of the road so that its right wheels were on the shoulder and as close to the right edge of the shoulder as possible, with due regard to safety. Photographs show the left front portion of the bus struck Adams' car, which according to Hughes and Lattier, and later verified by Deputy Sheriff Flowers and Sgt. La Fargue of the State Highway Patrol, was positioned at the moment of impact at an angle across the center of the road. Hughes then testified, and on this point he is corroborated by Lattier, the bus continued straight across a shallow ditch and stopped at a point one hundred twenty-five feet from where the collision took place. Hughes says he did not attempt to apply his brakes or turn his wheels for fear of overturning the bus. His judgment in this respect was approved by Lattier as being proper under the conditions so presented.
Billy R. Haynes and Saville McPherson also testified the Adams car approached the bus with a portion of the Adams car over into the bus' proper lane of travel. Billy R. Haynes gives this description:
"Q. Will you describe without me asking you questions what the bus did from there on out? A. Yes, sir. As the car began to slow down, he pulled to his side of the road, Hughes pulled back up on the black-top with the bus and came on across the bridge and as he cleared the bridge and started to straighten back out again it seemed that some way the car had gone out of control and it swerved directly on into the path of the bus over on Hughes' side of the road.
"Q. Will you describe to the Court what the car did just in as much detail as you can; anything you saw about what the car did? A. Well, as I said, as it came down the hill as he began to slow down and as the flashing light came on and he began to pull over to his side of the road and so only when it appeared that he would stop did it seem that Hughes pulled the bus back up onto the pavement and started across the bridge and the car it never did seem to me to come to an actual complete stop, it suddenly swerved over into the path of the bus and the next thing we knew we were going out across a pasture."
Murphy Brown also testified the Adams vehicle was on the wrong side of the road until it got so close to the bus he could no longer see it. Deputy Sheriff B. R. Flowers and Sgt. A. J. La Fargue of the State Police Department arrived shortly after the accident and gave their opinion from *76 the physical evidence found as a result of the heavy impact between the two cars, and the position of the Adams car on the highway, that the collision occurred when the bus was well on its side of the road and the Adams car was at an angle across the highway with the front portion of the Adams car in the open lane of travel for the bus.
Another witness, B. E. Achee, went out to the scene of the accident after it happened, took pictures and generally investigated it. He testified the imprints of the tires and the course taken by the bus indicated the bus as it re-entered the black top from the bridge, turned to the right and the right tires of the bus were on the right shoulder of the road before the impact between the two vehicles occurred. Similar testimony was given by C. E. Shriner and W. C. Kinney, officials of the bus company who conducted an investigation of the accident with Achee. To the contrary is the testimony of Henry Mack Adams and three young men, Huey Gibson, J. D. Smith and Billy Ray Gordon, who arrived after the accident and testified the Adams car was resting entirely in its proper traffic lane. The testimony of these young men is not impressive. The defendant, in our opinion, has clearly overcome its burden in establishing the collision between the two vehicles occurred entirely on the bus' side of the road.
By way of a summary, we hold the weight of the testimony convincingly shows Hughes at all times maintained a proper lookout and kept his vehicle under control; that he was not driving at an unreasonable rate of speed in approaching and crossing the bridge; nor was his bus just prior to and at the time of the collision, on the wrong side of the road. We are of the firm opinion Hughes operated the bus in a careful and cautious manner and was not guilty of any negligence whatsoever, and the sole and only cause of the accident was a sudden maneuver on the part of Adams which placed the Adams vehicle directly in the path of defendant's bus.
It follows, therefore, from our resolution of the issues as hereinabove set forth, the judgment from which appealed should be, and is hereby annulled, reversed and set aside, and it is now ordered there be judgment in favor of the defendant, rejecting the demands of plaintiff at her cost.