The plaintiff brought this suit against the W. Horace Williams Company and its insurance carrier, the Employers' Group, for compensation in the sum of $17.16 per week, for a period not exceeding 400 weeks, claiming to be totally and permanently disabled by reason of an injury which he claims to have received on May 1, 1941, while assisting in unloading some iron or steel from a truck. He claims to have received a strain which caused a left inguinal hernia, and that he has been incapacitated from doing hard manual labor since the date of the accident.
The substance of the answer is a denial that plaintiff received an injury which disabled him from performing his regular duties; also a denial that plaintiff suffers from a hernia. There was judgment in the lower court in favor of plaintiff, awarding him compensation at the rate of $17.16 per week for a period of 400 weeks, plus the further sum of $250 for medical expenses; also fixing the fees of the expert witnesses who testified in the case. The defendants have appealed.
There were five doctors who testified for the plaintiff, and an equal number of doctors who testified for the defendants. The doctors for the plaintiff testified that he has a hernia which disables him from doing hard manual labor, while the doctors for the defendants testified that he does not have a hernia. Because of this equal division of opinion among the medical experts, counsel for defendants urge this court to follow the example of the Second Circuit in the recent case of Mason v. Southern Kraft Corporation, La.App., 6 So.2d 757, and remand the case for further medical testimony.
A careful examination and analysis of the testimony, both lay and medical, convinces us of the correctness of the judgment, and for that reason we see no useful purpose to be served by remanding the case. The mere fact that medical experts are equally divided in their opinions as to the nature and extent of an injury is not a sufficient reason for remanding the case, unless the other evidence in the record and the circumstances connected with the case make it impossible for the court to arrive at a proper decision of the case. It is a well known rule of evidence that the number of witnesses, either lay or expert, is not the decisive factor in arriving at the true facts in a case, but the weight to be given the testimony of the witnesses is to be determined in the light of their opportunity for observation, their credibility, their knowledge and experience, the probability or improbability of their opinions and statements, together with the other facts and circumstances in the case which are to be considered along with the testimony of the witnesses.
Applying this rule of weighing the testimony in this case and in determining its probative value, we have reached the conclusion that the plaintiff has proven his injury and disability to a legal certainty for the following principal reasons:
The plaintiff was examined in October, 1940, when he first went to work for the defendant construction company near Alexandria, and nothing was found to be wrong with him at that time. He worked continuously and acceptably until he was transferred by the defendant construction company to Camp Polk where, in February, 1941, he was again examined by the doctors of the defendant company, and nothing was found in his physical condition to cause his rejection for hard manual labor. He worked regularly up to May 1, 1941, when, according to his statement, he picked up some iron as he was helping unload a truck and slipped and fell across the iron, causing a pain in his left side; that he went off and laid down for a while and then came back and told the foreman about his injury, whereupon the foreman sent him to the hospital in an ambulance; that he stayed in the hospital for ten or eleven days during which time he was treated by the company doctor, after which he went back and tried to work but could not do so on account of the severe pain in the lower part of his side. He then went to see Dr. Jones who suggested that he wear a truss, and that he went back to work and was given a light job in cleaning out toilets; that he was not able to do the work which the company assigned to him and was compelled to quit trying.
Two other witnesses who were present and helping handle the iron testified that the plaintiff stated at the time that he had hurt himself and that he went to the hospital shortly thereafter. While they did not see him fall, yet these two co-employees heard him make the statement that he was injured, knew that he went to the hospital for several days and that he did not work after he came back in the same way as he did before he claimed to have gotten hurt *Page 736 
and went to the hospital. There is nothing to disprove the statement of the plaintiff to the effect that he sustained a severe strain in his left side before he went to the hospital.
While there were ten doctors who examined plaintiff, five of whom testified he has a left inguinal hernia and five that he does not have any kind of hernia, yet we are forced to note the following significant facts: most of the doctors who testified for the plaintiff examined him a greater number of times than the doctors who testified for the defendants. For instance, Dr. Jones examined plaintiff in May, only a few weeks after he was injured, and found that plaintiff had a left inguinal hernia, and that he advised an operation. The plaintiff complained that he was not able to have an operation, and Dr. Jones advised him to get a good fitting truss and wear it. A day or two before the trial, Dr. Jones examined plaintiff again and found the same condition with the hernia a little aggravated. Likewise, Dr. Rozier examined plaintiff in September, 1941, and found that he had a left inguinal hernia which came down just outside the external ring. This doctor also examined plaintiff again a day or two before the trial and found the hernia a little larger than on his previous examination.
It might be stated here that all the doctors found a varicocele in the left spermatic cord, but they all concede that this condition was not caused from trauma, nor would it incapacitate plaintiff from work. It is intimated that this varicose vein in the spermatic cord might have been mistaken by the plaintiff's five doctors for a hernia, but these doctors state that, while they found the varicocele, there was also an incomplete left inguinal hernia, and they could not be mistaken about it.
Doctors Barham and Watkins examined plaintiff one time during the trial. They found no hernia. One of these doctors stated that he could not insert his finger into the left inguinal ring. Dr. Shaw examined plaintiff twice and he could find no hernia. Dr. Hardy examined plaintiff one time during the trial and he could find no hernia, but seems to think that the varicocele is the cause of the trouble. However, this doctor admits that he could feel a slight impulse when plaintiff coughed, but he attributed this impulse to the varicocele.
Several of the doctors for the defendants stated that plaintiff would not cooperate in the examinations and would flinch and draw back when they attempted to insert their finger in the inguinal ring. This attitude on the part of the plaintiff was probably caused from the varicocele, or from an undue sensitiveness characteristic of some people. There is no indication that plaintiff purposely assumed an attitude of abnormal sensitiveness to prevent the doctors from examining him. However, this attitude may have kept the doctors from being able to insert their fingers in the external ring, as one or two of defendants' doctors state they could not do, and this fact may account for their failure to discover the hernia which the other doctors found by inserting their fingers in the rings while the patient was in different positions.
But to us one of the most significant facts which supports plaintiff's claim is that Dr. Talbert, one of defendants' experts, examined plaintiff on June 25, 1941, less than two months after the accident, for the Weber-King Lumber Company and signed a report of this examination, stating that plaintiff was rejected for manual labor due to potential condition of the left inguinal ring. On the trial of this case some four months later, this doctor was called by the defendants and testified that plaintiff did not have a hernia and that both rings were normal. While the doctor attempts to explain this discrepancy in his report in June from his testimony at the trial by stating that in the first examination the plaintiff would not submit to an examination; that he pretended oversensitiveness and would not cooperate, and for that reason he turned him down, yet we cannot escape the conclusion that this doctor could not and would not have stated in his report rejecting plaintiff that he had a potential hernia in his left side, unless the doctor actually found from his examination that such was the condition.
Finding no error in the judgment appealed from, the same is hereby affirmed at the cost of defendants in both courts.
LeBLANC and DORE, JJ., concur. *Page 737