GLADNEY, Judge.
Plaintiff appeals from a judgment rejecting his demands for workmen’s compensation.
William IT. Faircloth was employed as a motor mechanic for the defendant, Deb Speights, the operator of a used car lot known as Caddo Auto Sales, in the City of Shreveport, Louisiana. On October 27, 1956, while engaged in work in the course and scope of his employment with Speights, the automobile in which plaintiff was riding was struck by a trolley car and plaintiff allegedly sustained a compensable injury to his back. More specifically, it is claimed he sustained a strain of the muscles on each side of the spine, the ligaments about the 10th, 11th and 12th dorsal vertebrae, the lumbosacral joint, and the erector spini muscles; and, further, it is alleged petitioner suffers constant headaches and is unable to sleep at nights. Compensation is sought for total and permanent disability payable at the rate of $32.50 per week.
Counsel for both parties in briefs agree the only issue now confronting the court is whether or not plaintiff sustained any compensable injury as the result of the collision between the automobile and the trolley.
Subsequent to the aforesaid accident plaintiff has not performed any work of a substantial nature and upon the date of trial, March 15, 1957, he still insisted he was unable to perform the duties required of an automobile mechanic. Immediately after the accident plaintiff complained of injury and was taken to the P. & S. Hospital where his back and neck were examined by Dr. H. H. Cohenour, who gave *523 a prescription, released him and asked that he return two weeks later if there was no improvement. Plaintiff testified he did return, was given heat treatments, and a few days later he was sent to see Dr. Ray E. King, an orthopedist. Neither the plaintiff nor the defendant summoned Dr. Co-henour to be a witness.
Dr. Ray E. King saw plaintiff on November 9, 24, 1956, and February 27, 1957. Dr. King testified that at the time of the second examination, November 24th, muscle spasm was still present and it was treated by traction administered intermittently to relax that condition. Dr. King’s findings at the time of the original examination on November 9th were stated by him to be:
“The patient has a mild sprain involving the soft tissue at the posterior cervical region and upper thoracic region posteriorly, which was evidently incurred two weeks ago when his automobile was struck by a trolley. The spasm in the posterior cervical muscles is probably responsible for the frequent headaches the patient is having. I believe this muscle spasm will respond promptly to physiotherapy treatments, and I believe the patient will make a full and complete recovery in two or three weeks time. I do not consider his symptoms and physical findings sufficiently severe at the present time to be totally disabling. He will return for further observation.”
Dr. King made a third examination on February 27, 1957, at which time he found no evidence of disability.
Faircloth was examined by Dr. G. H. Cassity, a general practitioner, on December 12, 1956, and March 15, 1957. Dr. Cas-sity testified his findings as determined by his first examination disclosed a spasm of the muscles on either side of the spine, and a strain of the ligaments about the 10th, 11th and 12th dorsal vertebrae and the lumbosacral joint. He opined these injuries should be well within three months from the date of the examination. The medical examination of March 15, 1957, indicated to the doctor that Faircloth had not completely recovered from the muscular strains in the back and neck, and the doctor thought the employee would be unable to do any lifting or any hard manual labor without substantial pain, and that such condition would continue another six months before there would be a complete recovery.
At the request of the defendant Fair-cloth was also examined by Dr. D. F. Over-dyke, orthopedic surgeon of Shreveport, Louisiana, on March 15, 1957. This was the only examination by Dr. Overdyke and was made just prior to the commencement of the trial of this case on March 21st. When questioned as to whether he found any objective signs or symptoms whatsoever of any defect or deficiency which would account for plaintiff’s pains, the doctor testified:
“The gentleman’s dorsal kyphosis or his round back was increased considerably over what is considered normal, which is of long standing, and was attributed by me to a disturbance in his growth centers probably during the adolescent or pre-adolescent period.”
By way of explanation the witness stated this condition could not be considered as a form of disability and he said he could find no reason why Faircloth should not return to his work as an automobile mechanic. In the report of his examination, Dr. Overdyke stated Faircloth had a partial permanent disability estimated to be six per cent to eight per cent, which he attributed to the pre-existing back condition. It is made apparent by the testimony of this expert witness he did not believe the aforementioned disability rating could have any pronounced effect upqn the ability of plaintiff to perform his regular work.
The conclusion reached by the three medical witnesses may be thusly *524 stated: Dr. King was of the opinion plaintiff had a sprained back which would totally disable him from performing the duties of his regular employment for a period, which disability was not present on February 27, 19S7; Dr. Cassity felt that plaintiff at the time of trial, March 21, 1957, was still unable to resume the duties of his occupation; and Dr. Overdyke, on March 15, 1957, believed there was no residual injury attributable to plaintiff’s accident of October 27, 1956. The testimonies of Drs. King and Overdyke, both orthopedists, that plaintiff was not disabled on March 15th, must be accepted as prevailing over the conclusions ’of Dr. Cassity. The testimony of a general physician is not accorded the same weight as that of an orthopedist when both testify as to the nature and extent of an injury which falls within the special field of orthopedics. But even though we recognize the application of this rule, our holding must be that the employee was able to return to the duties of his employment after February 2-7, 1957. The uncon-tradicted testimony of Drs. Cassity and King, to the effect plaintiff was totally disabled from October 27, 1956, until February 27, 1957, — a period of approximately 17 weeks, is accepted by the court. Our opinion is, therefore, that plaintiff is entitled to workmen’s compensation at the rate of $32.50 per week from October 27, 1956, until February 27, 1957.
It is ordered, adjudged and decreed that the judgment from which appealed be and it is hereby reversed, annulled and set aside, and it is further ordered, adjudged and decreed that there be judgment in favor of the plaintiff, William H. Fair-cloth, and, against the defendant, Deb Speights, d/b/a Caddo Auto Sales, in the sum of $32.50 per week for the period beginning October 27, 1956, and ending February 27, 1957, with legal interest upon his weekly installments from its due date until paid.
It is further ordered that the defendant pay all costs of this suit,- including, cost of the appeal.