AYRES, Judge.
This is an action for damages arising out of a head-on motor vehicle collision between plaintiff’s Chevrolet pickup truck and defendant’s assured’s Chevrolet automobile. Plaintiff sought damages aggregating $10,-720.36 which he itemized and claimed for pain and suffering, permanent disability, loss of earnings, medical expenses, and property damage to the truck. Liability was admitted within the policy limits.
On trial, plaintiff was awarded $7,998.-30. Contending that the award was excessive, exorbitant, and oppressive, defendant appealed and seeks a reduction by at least $5,500. Plaintiff answered the appeal, asserting, to the contrary, that the award was inadequate, and prayed that it be increased to the amount originally claimed. Although contending that the awards for property damage and for medical expenses in the sums of $720.36 and $778, respectively, were excessive, defendant, nevertheless, reluctantly conceded plaintiff’s right to such recovery.
Remaining for consideration on this appeal is the sole matter of the quantum of damages for the pain, suffering, and permanent disability allegedly sustained as the result of the aforesaid accident.
The facts may be briefly stated. Soon after the occurrence of the accident plaintiff was found by two neighbors who chanced to come by. He was in the cab of his truck in an unconscious condition. Being placed in an automobile, he was rushed to the hospital and clinic to Dr. L. S. Hucka-bay, Coushatta, Louisiana. Upon arrival, the doctor found that plaintiff was suffering such extreme shock that he was apprehensive of plaintiff’s survival. Plaintiff was given blood transfusions and administered oxygen during the continuance of his unconscious state, extending over a period of three days.
Plaintiff, according to Dr. Huckabay, sustained bruises all over his body and contusions of both knees and elbows. X-rays revealed broken ribs, the fourth and fifth on the right side. During the course of his hospitalization, extending from the date of the accident, November 21, 1958, to January 3, 1959, or for a period of 43 days, plaintiff developed, from the trauma, shock, and hospitalization, hyperstatic pneumonia lasting from two to three weeks. After his discharge from the hospital, plaintiff thereafter remained under the medical care of Dr. Huckabay, to and including the time of trial, ten months following the accident. Continuance of medical attention was indicated as necessary for an indefinite period thereafter.
Before further discussing the medical testimony, it appears appropriate to point out that at the time of the accident plaintiff was 63 years of age, in apparent good health, and fully able to and actually per *665 forming hard, strenuous manual labor. For the first seven years of an eight-year period immediately preceding the accident, plaintiff operated a motor patrol or a road-grading machine, for the Red River Parish Police Jury, and, for the year thereafter, being the year immediately preceding the occurrence of the accident, plaintiff operated a 16-ton bulldozer and a “bush hog.” Obviously, the operation of these machines, particularly a bulldozer, in clearing land -and uprooting and pushing down trees, et cetera, is strenuous labor requiring an exceedingly remarkable degree of agility to manipulate and apply the many levers and pedals.
Plaintiff testified that since his discharge from the hospital, he had not been able to ■resume his former employment, or employment of any similar character, but that his -activities had been confined to operating a ■fish-bait stand where he sold “shiners,” worms, and artificial bait, fishhooks, lines, leads, corks, and cigarettes, other than on ■one occasion, he assisted in shearing some sheep in connection with which he merely picked up the wool and tied it in small ■bundles as it was sheared from the sheep, and, on another occasion, when he assisted his son in trapping minnows. Neither of ■these activities required the lifting of any -objects of any consequential weight.
The medical experts testifying in the case, in addition to Dr. Huckabay, were Dr. Ira L. Campbell, Jr., a general practitioner, who, as did Dr. Huckabay, appeared personally, and Drs. T. M. Oxford -and Willis J. Taylor, orthopedists, and Heinz K. Faludi, a neurosurgeon, all of whom testified by a deposition.
Reference has already been made to the ■testimony and findings of Dr. Huckabay, as shown by the above résumé. He further testified, however, that, while in the hospital, plaintiff suffered severe pain and that ■there was sufficient basis from which it could be concluded, and from which he did •conclude, that plaintiff continued to suffer even to the day of trial. The doctor expressed the opinion that plaintiff had not completely recovered from the accidental injuries sustained and that, in his opinion, he would never do so to the extent of resuming any kind of hard labor. Plaintiff’s continual complaint of pain in his head, neck, shoulders, and back was consistent, according to Dr. Huckabay, with the extent and nature of the accidental injuries received by plaintiff in the impact of the collision, which he characterized as a form of whiplash injury.
During the course of Dr. Huckabay’s treatment of plaintiff, plaintiff was referred by Dr. Huckabay to Dr. Oxford, who examined plaintiff March 30, 1959. The doctor found no objective basis for plaintiff’s continued disability. He did find, however, osteo-arthritis in both lumbar and cervical areas of the spine, as well as arthralgia of the left elbow, left hip, and both knee joints. He would not, however, classify the arthritis as traumatic in origin, but stated that, where plaintiff had never suffered pain in his cervical and lumbar spine prior to the accident, the accident probably aggravated the arthritic condition. Similar testimony was given by Dr. Willis J. Taylor. Both he and Dr. Oxford testified that evidence of shock and unconsciousness, as experienced by plaintiff, indicated that he had received severe and painful injuries; but that he was able, in their opinion, to return to his former work; and that, if he was able to operate a bulldozer before the accident, he could do so thereafter. This opinion was qualified, if plaintiff, in fact, suffered pain as he complained.
Dr. Faludi, who examined plaintiff September 8, 1959, testified that plaintiff suffered shortness of breath, breathed heavily, and walked with a slight limp, probably due to pain in both knee joints; tenderness over all cervical spinous processes; callous formations on the third, sixth, and seventh ribs on the right side, with a deviation or angulation of the ninth rib slightly beyond normal which, together with the aforesaid callous formations, indicated old frac *666 tures; swelling was apparent over the right knee, with scars on both knees. In addition to the other injuries suffered by plaintiff, Dr. Faludi was of the opinion that plaintiff had suffered a whiplash injury in a moderate degree. His opinion was that plaintiff was totally disabled and was not, nor would he ever be, able to do hard manual labor such as, or similar to, operating a bulldozer.
Testifying pursuant to an examination made September 14, 1959, Dr. Ira L. Campbell, Jr., testified that, in his opinion, plaintiff was not able to do heavy manual labor and, in view of the time elapsed since the accident, and considering his age, plaintiff’s inability to do such work was permanent.
In evaluating the testimony of the aforesaid experts, we are urged to give consideration to a rule generally prevailing in workmen’s compensation matters. The general rule urged for our consideration is that the testimony of an expert is entitled to greater weight than that of a general practitioner, where both testify as to the nature and extent of an injury which comes within the special field of the expert. Edwards v. Aetna Casualty & Surety Company, La.App., 108 So.2d 126; Faircloth v. Speights, La.App., 106 So.2d 522; Green v. A. C. Campbell Construction Co., Inc., La.App., 78 So.2d 54; Rider v. R. P. Farnsworth Co., Inc., La.App., 61 So.2d 204.
Tort actions, wherein involved are personal injuries, are similar in character to actions for workmen’s compensation predicated upon personal injuries, at least, as regards the proof of such injuries. Therefore, we know of no good reason why the rules in the latter character of cases should not generally be applied in the former.
Similarity of issues in the two classes of cases, however, would seem, by the same logic, to admit of not only the application of the aforesaid rule but of all appropriate rules, such as, for instance, the rule where the testimony and opinion of an attending and treating physician is given more weight than that of a physician who only examines the injured party, particularly where the examination was made long after the injuries were sustained and where such examination was not made for the purpose of treatment. Anderson v. Peek, La.App., 102 So.2d 776; Richmond v. New Amsterdam Casualty Company, La.App., 85 So.2d 717; Roy v. Guillot, La.App., 84 So.2d 469; Walker v. Monroe, La.App., 62 So.2d 676.
The rule is concisely stated in 100 C.J.S. Workmen’s Compensation § 547(10), pp. 617-618:
“The testimony of a specialist in the particular field involved is entitled to more weight than that of a nonspecialist, and, as a general rule, greater weight should be accorded to the testimony of trained and experienced surgeons than to that of nonsurgeons or general practitioners. There is a rule of thumb, applicable in certain circumstances, that where there is a conflict in the testimony of medical experts, the court will give greater weight to that of the treating physician. So, the factual or opinion evidence of a physician who has first-hand knowledge of the case is entitled to greater weight than that of a physician who testifies without such knowledge; the opinion of the attending physician should be given greater weight than that of a physician who examined the employee only on one or two occasions; and the testimony of the physician first examining an injured person is usually accorded greater weight than the testimony of one more remotely removed therefrom.” (Emphasis supplied.)
However, from the record, it would appear that neither plaintiff’s complaints of injury nor the proof thereof come entirely and exclusively within the field of orthopedics or the field practiced by the neurosurgeon. Nor do both fields encompass all phases of plaintiff’s complaints and *667 injuries. The rule as to the weight to he given the testimony of experts does not apply as to injuries not included in the specialty of the expert. Woodfin v. Paul, Rice & Levy Inc., La.App., 52 So.2d 307.
The duty of the court is to arrive at the actual truth of the questions involved, whether the disputed fact is sought to he proved by medical or lay testimony. In either case, the same rules apply as to the weight to be accorded the testimony. This weight is to be determined in the light of the witnesses’ opportunity for observation, their knowledge and experience, their credibility, and the probability or improbability of their statements and opinions. Johnson v. Hillyer, Deutsch, Edwards, Inc., La.App., 185 So. 652; Miller v. W. Horace Williams Co., La.App., 8 So.2d 734; Parker v. Kirby Lbr. Corporation, La.App., 28 So.2d 776.
Dr. Faludi examined plaintiff September 8, 1959, and Dr. Campbell September 14, 1959, obviously in preparation for the trial September 21, 1959, as no doubt did Dr. Taylor in his examination of June 15, 1959, following the filing of defendant’s answer twelve days prior thereto. While the examination made by Dr. Oxford March 30, 1959, was at the request of Dr. Huckabay, Dr. Oxford’s opportunity for observation of plaintiff and his condition was limited, as was that of the other examining physicians, to only one occasion and one examination. Their opportunity for observation could not be compared to that of Dr. Huckabay who had plaintiff under his care, in his hospital, and examined and treated him from the day of the accident for a period of 43 days, and thereafter for ten months following the accident and to the day of trial. The great superiority of opportunity of Dr. Huckabay for observation and diagnosis of plaintiff’s condition, predicated upon actual experience and knowledge acquired in the course of his examinations and treatments, must be recognized, particularly in view of the doctor’s long experience of 40 years in the practice of his profession and the operation of a general hospital. Thus, in view of the doctor’s aforesaid experience, his opportunity for examination and treatment of the plaintiff and from his personal knowledge and relationship with plaintiff for a period of 25 to 30 years, we can only conclude that his testimony is entitled to be accorded great weight. And, it may 'be pointed out his testimony, as to plaintiff’s injuries and the permanent effects thereof, is generally corroborated by the findings and conclusions of both Drs. Faludi and Campbell.
Giving due weight and consideration to all the testimony, the conclusion is logical and inescapable that plaintiff sustained severe and painful injuries, shock and unconsciousness, and that, as a result thereof, he has and did, until the time of trial, suffer pain and discomfort, a continuation of which is not at all unlikely, and that he was, from and following his accidental injuries to the date of trial, totally disabled from the performance of hard manual labor. That such disability is probably permanent is indicated in the opinion of Drs. Huckabay, Campbell, and Faludi.
In making an award, each case must in reality be adjudged upon its own facts and the law applicable thereto. Although the ideal is that awards in personal injury cases, for similar injuries and comparable conditions, possess some degree of uniformity, due to the human elements involved in fixing awards and the dissimilarity of cases, the ideal is seldom attainable.
The trial court, other than as to medical expenses and property damage, did not itemize the award, but a calculation discloses that it awarded $6,500 for plaintiff’s pain and suffering, permanent disability, and loss of earnings. Neither are we called upon or required, under the pleadings and evidence, to itemize the award. In view of the immense pain and suffering experienced by plaintiff, his disability, and loss of substantial earnings, we *668 have concluded that the award is neither excessive nor manifestly insufficient.
The judgment appealed is, therefore, affirmed at appellant’s cost.
Affirmed.