HOOD, Judge.
This is a workmen’s compensation suit instituted by Warren Myers against J. B. Tally, Inc., and its insurer, Employers Commercial Union Insurance Company. Judgment was rendered by the trial court in favor of plaintiff, and defendants have appealed.
The sole issue presented is whether plaintiff has been disabled since the date on which the payment of workmen’s compensation benefits was discontinued.
Plaintiff sustained a neck injury on November 27, 1972, while working as a bulldozer operator for defendant, J. B. Tally, Inc. The bulldozer hit an obstruction as it was being operated over a pile of dirt, causing Myers to be thrown forward in the machine. He contends that he has experienced severe pain in his neck and right arm since that time, and that that pain and the occasional loss of strength in the arm have disabled him from performing manual labor.
*62 Myers was treated by Dr. Joseph Gerard Patton, a general surgeon, from December 1, 1972, until November 26, 1974. The treatment administered included the prescription of muscle relaxants and analgesics, heat therapy and the use of a neck collar. Dr. Patton discharged plaintiff as being able to perform manual labor on March 13, 1973, but Myers returned for more treatment shortly thereafter because of a recurrence of his neck pains. He did not respond to the treatment administered after this recurrence, so Dr. Patton, suspecting that he might have a cervical disc problem, referred him to Dr. J. Frazier Gaar, an orthopaedic surgeon, on April 26, 1973. Plaintiff was treated by both of those physicians for several months thereafter.
Dr. Gaar began treating plaintiff on April 30, 1973. He at first administered conservative treatment, as Dr. Patton had done, but plaintiff’s condition did not improve, so on July 20 a cervical myelogram was performed. The. myelogram showed a “definite constant filling defect at the C-S, C-6 level on the right, compatible with a degenerative disc of the cervical spine in C-S, C-6 region on the right.”
To remedy that defect, surgery was performed by Dr. Gaar, assisted by Dr. Patton and another doctor, on August 23, 1973. The surgery consisted of an anterior cervical diskectomy, with the removal of the above cervical disc and replacing it with a bone graft from the right iliac crest region to make the cervical segments of C-5 and C-6 solid. Dr. Gaar continued to care for plaintiff until April 29, 1974, when he discharged Myers as being able to return to his former type of employment, although he advised him to resume work “slowly and progressively.” Dr. Gaar estimated that plaintiff had “approximately a ten (10%) percent whole body permanent physical impairment and loss of physical function as a result of the cervical disease and operation procedure,” but he felt that that impairment would not disable him from performing heavy manual labor.
After being discharged by Dr. Gaar, plaintiff obtained employment operating motor patrols, which was less strenuous than the type work he had previously performed, but he discontinued that work about two weeks later because of pain and stiffness in his neck. Dr. Gaar examined plaintiff again on May 27, Í974, but concluded that he had not had a recurrence of his neck problem, nor had he damaged any of his surgery. He testified that he still felt that plaintiff was able to return to his former employment as a heavy equipment operator, but he qualified that opinion by stating that:
“. . . Now it depends on what heavy equipment he’s driving. If he’s driving something that’s bouncing him and bumping him around all day long, maybe he may have difficulty . . .”
Although plaintiff was discharged by Dr. Gaar, he remained under the treatment of Dr. Patton for several months thereafter. Dr. Patton saw plaintiff last on November 26, 1974, at which time he recommended that Myers continue to use pain relieving medication, muscle relaxants and heat for his neck. He described plaintiff’s neck muscles as being spastic, stiff and painful. He testified that in his opinion plaintiff was not able to return to work as a heavy equipment operator, such as driving a bulldozer, on the last mentioned date.
Both of the treating physicians found that plaintiff developed a “compression of the nerve in his hand” or an “ulnar nerve palsy,” after the operation was performed. Dr. Gaar did not relate that condition to the accident, while Dr. Patton felt that there could be such a relationship. Neither doctor found that the condition of plaintiff’s hand, in itself, was disabling.
The evidence shows that the operation of a bulldozer constitutes heavy manual labor, requiring the use of the operator’s body, arms, legs and feet. A bulldozer operator testified that the “machine jumps up and down all the time,” and that it gives the operator a “rough ride.” Plaintiff de *63 scribed his job as being “jarring work” and “rough work,” requiring the operator to “move your head around, look on both sides, up and down, constantly all day, you have to do that, all day.”
Plaintiff has been paid workmen’s compensation benefits, at the rate of $49i00 per week for a period of 100 weeks. He also has been paid medical expenses amounting to $5,666.24.
The trial judge concluded that plaintiff is totally, disabled from doing substantially the same type of work he did at the time of the accident. He accordingly rendered judgment awarding plaintiff compensation benefits for total and permanent disability, allowing him credit for amounts previously paid.
Defendants contend that the trial judge erred in failing to give more weight to the opinion expressed by Dr. Gaar, an orthopaedist, than that expressed by Dr. Patton, a general surgeon. See Faircloth v. Speights, 106 So.2d 522 (La.App. 2 Cir.1958); Shuff v. Liberty Mutual Insurance Company, 134 So.2d 707 (La.App. 3 Cir.1961).
We are aware of the rule which was applied in the' cited cases. In the instant suit, however, the orthopaedic specialist qualified his opinion to some extent by conceding that plaintiff may experience disabling pain when he attempts . to > perform the kind of work he was doing when the injury was sustained. In addition to the part of his testimony which already hás been quoted, Dr. Gaar also stated:
“I think it’s possible that he may have episodes of pain periodically. .1 don’t feel that they would be significant or moderate. I do feel that he possibly will experience some mild pain off and on in the neck: region. However, I don’t think that this would disable him to the point where he could not partake in driving heavy equipment. However, I could be wrong, and he may have a lot of pain. This is something I can’t measure. I know that he had a good result with the surgery, and everything looked well. He should be able to resume his activities. If he was ’bothered with this, then he would probably have to refrain from the things that give him discomfort.”
Considering Dr. Gaar’s uncertainty as to the amount of ’ pain which plaintiff “possibly will experience,” we do not find a great difference between the opinions expressed by the two treating physicians. The differences in their views appears to be based largely on the amount of pain which each feels will be suffered by plaintiff as a result of the accident. Dr. Gaar stated that Myers may have difficulty “if he’s driving something that’s bouncing him around all day long.” The evidence shows that the operation of a bulldozer does that. Dr. Patton conceivably had a better understanding of the nature of the work which had been performed by plaintiff.
We are unable to say that the trial judge erred in holding that plaintiff has been totally disabled since the payment of compensation benefits was discontinued, and in awarding plaintiff compensation benefits based on total and permanent disability.
There is no merit to defendants’ additional argument that plaintiff is entitled, at most, to compensation benefits based on the permanent partial loss of the use of the body as a whole, under LSA-R.S. 23:1221. We have found that plaintiff is still totally disabled, and that he is entitled to continue to'-receive compensation benefits at the maximum rate. Since plaintiff is totally disabled, he is entitled to benefits based on total and permanent disability, instead of the lesser amount which otherwise might be due under LSA-R.S. 23:1221.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendants-appellants.
Affirmed.